SOLON DANFORTH v. SEBASTIAN R. STREETER.

*Abandoning portion of claim to give a justice jurisdiction. Res
gestæ. Maintenance and champerty.*

A party having a claim in assumpsit for over $100, may abandon a portion of it or
reduce it to a sum less than $100, and thus be enabled to commence and sustain an
action before a justice of the peace for its recovery.

What is said by a person when he goes to call upon another may be given in evi-
dence, as a part of the *res gestæ*; for the purpose of showing the true object and

character of the act, when the act itself is equivocal, and the person called upon claims for it a different character and effect from that intended.

The terms *maintenance* and *champerty* not applicable to *bonà fide* purchases of rights of action;—and, *quære*, whether these offences, as they existed at common law, are recognized in this state.

ASSUMPSIT for money had and received. The action was originally commenced before a justice of the peace, and came to the county court by appeal. Plea, the general issue; trial by jury, May Term, 1855,—UNDERWOOD, J., presiding,

The plaintiff gave evidence tending to prove that, in the early part of the year 1850, a suit was commenced before a justice of the peace, by William W. Myrick against Minot Wheeler, to recover the value of a horse; that the defendant, who was an attorney at law, was employed by Myrick to commence and prosecute said suit; that before the justice, a verdict was rendered in favor of Myrick, and the suit appealed and entered in Windsor county court, at the May Term, 1850, and was continued from term to term to the May Term, 1851, when a final trial was had, and a verdict returned and judgment rendered in favor of Myrick, for $113.70 damages; that the defendant Streeter received from the defendant in that suit the full amount of said judgment, amounting in all to something more than $113.00; that in March, 1851, the plaintiff Danforth bought of Myrick the said suit, and agreed to take it, as from the commencement, and prosecute the suit to final judgment, at his own charge and expense, and have to his own use whatever should be received therein, and pay the amount of the defendant Streeter's charge therein, and pay to said Myrick the additional sum of $30.00; that thereupon the said Myrick and the plaintiff saw the defendant Streeter, and gave him notice that the plaintiff had purchased the suit, and inquired of the defendant what was the amount of his charges in the suit, and was informed by him that he should charge, for his services to that time, the sum of $10.00; that the plaintiff thereupon agreed to pay the said sum of $10.00, when the suit should be terminated; that Streeter agreed to wait, and also to furnish his minutes of the testimony before the justice, and to leave said minutes at Tracy & Converse's office in Woodstock; and that the plaintiff then dismissed him from further attendance upon the suit, employed other counsel to conduct the

suit for him; and that the defendant Streeter was never thereafter employed in said suit, and rendered no services therein at the request of the plaintiff, but received the execution and collected the money thereon without the knowledge or request of the plaintiff, who, upon learning that he had so collected it, called upon the defendant and demanded of him the said money; and that the defendant insisted that he had a claim upon the money for his services in said suit, as to all except the sum of $50.00, which he offered to pay to Myrick, but refused to pay to the plaintiff.

After the testimony was closed, the defendant moved that the suit be dismissed, for want of original jurisdiction in the magistrate who tried it, insisting that the aforesaid debt, or matter in demand, upon the plaintiff's proof, exceeded the sum of $100. The court overruled the motion, to which the defendant excepted.

The plaintiff also introduced testimony tending to prove that, in the suit of *Myrick* v. *Wheeler*, at the May Term, 1850, an order was made that the plaintiff furnish additional bail, in the sum of $75.00, and that the plaintiff consented to become and did become recognized for said Myrick in said sum of $75.00, upon condition that he should receive security therefor, but it did not appear that said Myrick ever refused to give an indemnity, or that he was afterwards requested to do so, the agreement being rendered inoperative by the sale of the suit, entered into in March, 1851, as above stated.

The defendant gave evidence tending to prove that he never was discharged, by Danforth or Myrick, from further attendance upon said suit, as an attorney, and that, on the contrary, on the day preceding the trial, he was requested by, and that he did thereupon go with the plaintiff, to the office of Tracy & Converse, and inform them in respect to the suit and the testimony; and issued a subpœna for the witnesses, and, the next day, did attend the trial, as an attorney, with Tracy & Converse. The plaintiff, upon this part of the case, insisted that he did not request the defendant to go into the office of Tracy & Converse for consultation, or in any respect as an attorney; but that it had been formerly agreed that the defendant should furnish the minutes of testimony taken by him at the trial before the magistrate, and leave them at Tracy & Converse's office, and that because he had not furnished said minutes, and had

not them with him, the plaintiff requested the said Streeter to go with him to the office of Tracy & Converse, and state to them, from his recollection, what the testimony was, as given before the magistrate. To prove this, the plaintiff, among other testimony, called Andrew Tracy as a witness, and offered to prove by him that the plaintiff called at the office and inquired if the minutes had been left there, and being informed they had not, left the office to procure them, or get the defendant to come in and state over the testimony given before the magistrate; to this testimony the defendant objected, but the court admitted it, although there was no direct proof that the defendant was notified before or while there, of the plaintiff's purpose of calling him in, nor was there proof that, while in the office, the defendant was notified that he was not consulted as attorney in the suit.

The defendant, among other things, requested the court to charge the jury that the sale of the suit by Myrick to the plaintiff under an agreement that the plaintiff should prosecute the suit for the future, and indemnify Myrick for past costs and expenses, was champertous, illegal and void, and that, therefore, the action could not be sustained in the name of the plaintiff; but the court declined so to charge the jury as requested, to which refusal the defendant excepted.

*Washburn & Marsh* for the defendant.

There was error in overruling the motion to dismiss. The justice, upon the plaintiff's testimony, had no original jurisdiction of the suit, and consequently, the county court could have no appellate jurisdiction.

The jurisdiction of a justice is confined to suits in which "the debt, or other matter in demand, does not exceed $100." Comp. Stat. 233, § 20.

The "matter in demand" does not imply the mere claim of the plaintiff, as set forth in his declaration, but is equivalent to what his proof entitles him to demand as the subject matter of his action; *Ladd* v. *Hill*, 4 Vt. 170 ; *Southwick* v. *Merrill*, 3 Vt. 320 ; *Brush* v. *Hurlburt*, ib. 46.

The objection to the testimony of the witness, Tracy, was well taken.[1] There was no pretence that the purpose or the declarations of Danforth were communicated to the defendants.

The sale of the suit by Myrick to Danforth was champertous, illegal and void; *Haloway* v. *Low*, 7 Port. 488 ; *Thurston* v. *Percival*, 1 Pick. 416 ; *Key* v. *Vattier*, 1 Ham. 132 ; *Rust* v. *Lame*, 4 Litt. 417 ; *Brown* v. *Beauchamp*, 5 Moore 416 ; *Stanley* v. *Jones*, 7 Bing. 369 ; Co. Lit. 368 b ; Bac. ab. Tit. Maintenance ; 4 Kent 449 n. a ; *Whittle* v. *Skinner*, 23 Vt. 531 ; 2 Pars. on Cont. 263; *Prosser* v. *Edmonds*, 1 Y. & Coll. 481 ; *Wilson* v. *Short*, 6 Hare 384 ; *Harrington* v. *Milligan*, 2 Mylne & K. 590 ; *Webb* v. *Armstrong*, 5 Humph. 379.

*Converse & Barrett* for the plaintiff.

The opinion of the court was delivered by

REDFIELD, CH. J.  This is an action of assumpsit for money had and received.  Upon the trial it seemed, from the proof, that the plaintiff might have been entitled to recover a few dollars beyond the amount of the justice's jurisdiction, if he had brought his suit in the county court, and for this reason the defendant moved to dismiss the action.  This motion, we think, was correctly overruled.  The action being an open action, the plaintiff may, if he choose, reduce his claim in the writ below $100, at his election. The identity of the claim does not depend upon the amount demanded.  There can be no possible objection to allowing the plaintiff to abandon a portion of such a demand  It has never been considered that because property was worth above $100, that an action of trespass, or trover, for taking and converting it, must, of necessity, be brought to the county court.  The plaintiff may, in such case, set his own price upon the property.  So, too, in assumpsit, where there is no express contract, the plaintiff may ordinarily fix the extent of his claim downwards.  And even where the jurisdiction depends upon the amount due as in case of notes, it was held, *Herren* v. *Campbell*, 19 Vt. 23, that the plaintiff might endorse the amount below $100, for the mere purpose of bringing the suit before a justice, and when no payment was in fact made. We think the plaintiff has equal right to abandon a portion of a claim like the present.  The judgment is, of course, a bar to the whole, and the case seems to us much more obvious than that of a promissory note.

II. In regard to the proof of plaintiff's declaration, at the time he went to call the defendant into the office of Tracy & Converse, it

was so far a part of his conduct at the time, that he might show it for the purpose of giving character to his act, which, being equivocal, was relied upon as evidence, against him, of a purpose to continue the defendant in the suit as counsel. We think he was fairly entitled to show all that he did, and all that he said, calculated to give character to his acts, with a view to rebut the inference as to his intention in calling the defendant into the office.

This would not bind the defendant, unless he was, in some way, made aware of the purpose for which he was called into the office. But it is one indispensable step in the process of proof, to show the plaintiff's purpose. If he failed in that, the defendant was of course entitled to treat it, as the plaintiff intended it, as a further employment. But although, if the plaintiff did show his intention not to employ the defendant as counsel, he was compellable to go further and show that the defendant was, in some way, made aware of this, he is, in no sense, bound to prove both points at the same time, or in the same manner. The whole transaction at the office, before he left to call the defendant, seems so intimately connected with the plaintiff's purpose and object, in going to call the defendant, that we think the plaintiff must be allowed to show it, with a view to rebut any inference against him on that account, if he thinks it will have that effect. The jury were to judge in this, as in all such cases, whether the declarations were made *bona fide*, or were a mere ruse to get 'up evidence upon his own behalf, or for some other intended purpose. It does not occur to us that this is extending the *res gestæ* beyond its acknowledged limits. We think not.

III. Whether there is anything of maintenance or champerty in this case, is undoubtedly a question which might strike different minds differently. Maintenance, according to the text writers, is an officious or unlawful intermeddling with suits, in which one has no interest real or supposed, or the upholding of quarrels by assisting either party with money or otherwise. 4 Bac. Abr. 488. 4 Black. Com. 134. Maintenance seems to embrace champerty and embracery, the former of which is where one assists a party with the agreement to have part of the thing recovered, and the latter is an attempt to further the interests of one or the other party by influencing the jury. So the general term, maintenance, is applied to any assistance which one may unlawfully give either party in a suit.

But I cannot find that the term maintenance or champerty, has ever, in modern days, certainly, been held to apply to the *bona fide* purchaser of a mere right of action even. Blackstone, indeed, says, " in one sense of the word [champerty] it signifies the purchasing of a suit, or right of suing." But in the same sentence he says, " this is one main reason why a chose in action is not assignable at common law." The learned commentator does not intend here to be understood, that the assignment of a chose in action is maintenance or champerty. No lawyer is, we presume, prepared to contend for any such doctrine. This will cut up, by the roots, half of the business transactions almost, of the most commercial states in the world. The public sense would so revolt at the promulgation of any such doctrine, that if we found it distinctly declared in the common law of England, we should regard it as among the excepted rules, in our adoption of the common law, as not " applicable to our local situation and circumstances," or as " repugnant to our local customs and usages."

But it is evident the writers on this subject have no such understanding of the offences. For in Bacon's Abridgement, under the head of what interest will excuse one for what otherwise would be maintenance, we find " he who has an equitable interest in a chose in action, as the assignee of a bond for a good consideration, may lawfully maintain a suit." Now this is the ordinary case of the assignee of a chose in action. And I apprehend there can be no manner of doubt, that the *bona fide* purchaser of a bond, or notes not negotiable, or other chose in action, which is of the nature of a debt, which is represented to be due, and which the purchaser believes to be due, may sue upon the same, and not incur censure from the law, and that all contracts, founded upon any such consideration, are perfectly valid. The same is true of any aid one may render another in a suit, by way of money or advice, or other lawful assistance, if it be done under a bona fide belief in the justice of the cause. It is laid down in Bac. Abr. 491, " one may lawfully give money to a poor man, to enable him to carry on his suit," and every man is poor who has not the means of meeting the expense of enforcing his rights in a court of justice. And of course if one may give, he may lend, with the expectation of being reimbursed out of the avails of the money. And I cannot very well compre-

hend the difference between a debt and a claim for property attached upon another's debt. It has always been considered that while the property remained *in esse*, the fact of it being out of the possession of the owner, did not preclude the owner from transfering the title, so as to enable the vendee to maintain trover in his own name, against any one who wrongfully withheld the possession. And why, upon principle, it is not equally allowable to transfer the claim *bona fide*, while in suit, so as to enable the purchaser to proceed with the pending suit, is certainly not easy of comprehension.

And this court having decided that the sale and conveyance of land in the adverse possession of a stranger, is a valid contract between the parties, and vests such equitable rights in the grantee as to enable him to pursue the land in the name of the grantor for his own benefit, and that a court of law will take notice of and protect his equitable interest; *Edwards* v. *Parkhurst*, 21 Vt. 472; it would seem that the chief basis of the old common law offence of maintenance or champerty was reduced within very narrow limits.

The offence certainly does not exist, in form, in this state, unless the common law offence has been adopted as part of the law of this state, which I am reluctant to believe was the purpose of the legislature, unless with some qualifications.

It is no doubt true, that any combination, for the purpose of pursuing protracted causes of action, or such as are not believed to be just, or such, perhaps, as the original parties did not intend to pursue, or the pursuit of such causes of action as are believed to be valid, in a manner and to an extent which the parties could not, or would not do, with a view to unjust gains or unequal advantages, may be still regarded as in the nature of a conspiracy, and so, probably, indictable, and all contracts for the furtherance of such objects wholly void. There are probably other things coming more nearly to the idea of the common law definition of maintenance or champerty, such as carrying on suits for a share of the avails, and thereby increasing litigation, and some others, perhaps, which the law will still regard as champertous, and not countenance.

But the present case does not seem to us of that character.

33

Here there is no pretense thé claim was not *bona fide*, for it proved valid. There is nothing to show that the purchase was not also in the utmost good faith, or that it, in any sense, changed the character of the prosecution or that it was expected to do so. And, in addition to all this, the plaintiff had before this time, *bona fide*, it would seem, become bail for costs, in conformity with the statute, which implicated him to the fullest ,extent in the hazards of the litigation. It would be strange if, under these circumstances, he could not assume the entire burden of the suit.

Judgment affirmed.