Dorwin *v.* Smith.

CANFIELD DORWIN *v.* HEMAN R. SMITH.

*Consideration.    Illegal   Contract.    Maintenance.    Statute   of*
*Frauds.    Indebitatus   Assumpsit.    Statute   of   Limitations.*
*Payment.*

An injury to the promisee, as, for instance, if he incurs expenses in reliance upon the promise, or a benefit to the promisor, is a sufficient consideration for a promise.

If the plaintiff and defendant had, or thought they had, a similar interest, dependent on the settlement of the same question, and the defendant promised the other that, if he would commence and carry through a suit in his own name to settle such question, he would pay him one-half of the expenses incurred by him therein, when they should be ascertained. In consequence of and reliance upon such promise the plaintiff brought and prosecuted the suit to a final termination. *Held,* that the promise was founded upon a sufficient consideration.

At the time such agreement was made, it was mutually expected that the defendant would be called as a witness for the plaintiff on the trial of the suit. As the law then stood he could not have testified if objected to on the ground of interest. *Held,* that such mutual expectation was not equivalent to a contract that the defendant should be called as a witness, and that, in the absence of proof of any corrupt intent in such expectation, such an agreement was not void as contrary to public policy, or as *maintenance.*

The offence of *maintenance* now seems to be confined to the intermeddling of a stranger in a suit for the purpose of stirring up strife and continuing litigation.

*Held,* also, that such promise was not within the statute of frauds as being a promise to answer for the debt of another.

*Indebitatus assumpsit* for money paid may be maintained upon such a contract to recover one-half the expenses sustained in such suit.

In such case the statute of limitations would not begin to run until after the expense of the suit had been in fact paid by the plaintiff.

A bill for a portion of such expenses was presented to the plaintiff, who thereupon lent the person claiming it a sum of money larger than the account, and took his note for the money with the understanding between them that the account was to go against the note when they should finally settle. *Held,* that this was equivalent to a payment of the bill by the plaintiff, so that he might recover one-half thereof of the defendant in assumpsit for money paid.

INDEBITATUS ASSUMPSIT for money paid. The facts of the case and the rulings of the court below are stated in the opinion of the court. The case was tried by jury at the April Term, 1861, PIERPOINT, J., presiding. The defendant excepted to the charge of the court. The jury rendered a verdict for the plaintiff.

*N. Peck* and *George F. Edmunds,* for the defendant.

*Daniel Roberts,* for the plaintiff.

KELLOGG, J. The plaintiff's evidence on trial tended to show that, prior to 1851, he and the defendant severally had levied executions, each in his own right and neither having any interest in that of the other, upon distinct but adjoining parcels of land in Hinesburg, which had, before such levies, been conveyed by one Boynton, the debtor in said executions, by a deed of conveyance to one Lyman Dorwin ; that Lyman Dorwin had died, and that Noble L. Partch was the administrator of his estate, and, as such administrator, was in possession of the lands so levied on ; that it was claimed by the plaintiff and defendant that the deed from Boynton to Lyman Dorwin was fraudulent and void as to Boynton's creditors ; that the rights of the plaintiff and defendant under their respective levies depended on the same question, viz., the invalidity of the said deed,—and that they so understood the matter, and believed that the practical effect of a suit to test that question, with a recovery therein, in the name of either, would be a surrender by the administrator of the possession of the land embraced in both levies ; that, after a considerable negotiation as to which should begin the suit, it was finally agreed that the plaintiff should do so ; that thereupon, in August, 1851, the plaintiff and defendant entered into an oral contract that the plaintiff should commence and prosecute an action of ejectment upon his levy against said administrator, and that the defendant should pay to the plaintiff one-half of the expenses of so doing ; that it was then and there mutually expected that the defendant would be called as a witness for the plaintiff on the trial of said action ; and that the said

action was commenced and prosecuted by the plaintiff, and tried by a jury in the county court in this county at the March Term, 1852, when the defendant was called and testified as a witness on the part of the plaintiff, and a verdict was rendered for the plaintiff. The plaintiff's evidence also tended to sho w that it was a part of the original understanding between him and the defendant that he, the plaintiff, should go forward and make the necessary disbursements in the suit, and that the expenses, when ascertained, should be adjusted between them under said agreement. The plaintiff also gave evidence tending to show that, during the progress of the suit, he paid costs, fees, and other expenses therein from time to time, and that, after the suit terminated by final judgment in his favor at the March Term, 1853, he received the taxable costs in the suit through his attorneys, and that he ascertained and paid the balance of their fees within six years next before the commencement of this suit, and that he then called on the defendant to pay him the one-half of such sum, who refused to settle or pay any part thereof. A portion of these expenses consisted of a bill of one Toby, which Toby charged to the plaintiff and called upon him to settle in 1856. The plaintiff recognized the bill as a debt against him, but did not pay it in any other way than by letting Toby have a sum of money larger than the amount of the bill, and taking Toby's note for the money, with the understanding between them that the account was to go against the note when they should finally settle, and no other payment or settlement was afterwards made between them.

The present action is *indebitatus assumpsit* for money paid.

The defendant pleaded (1) the general issue, (2) *non assumpsit infra sex annos*, and (3) *actio non accrèvit infra sex annos*. The action was commenced on 2nd March, 1860. The county court on the trial ruled, and instructed the jury, that if the contract as claimed by the plaintiff, and as his evidence tended to prove, was satisfactorily made out, the plaintiff was entitled to recover one-half of all the expenses of said action against said administrator, with interest thereon from the time of such payments, less what the plaintiff had received for the costs in said action. The defendant excepted to this ruling of the court, and several

questions were raised by him on the trial which are now insisted upon as arising on his exceptions.

I. The defendant insists that there was no consideration for his alleged promise. The plaintiff's evidence tended to show that he and the defendant had a similar interest, dependent upon the settlement of the same question,—that question being in respect to the validity of the deed executed by Boynton to Lyman Dorwin,—and that they so understood the matter, and each believed that the practical effect of a suit and recovery by either would enure to the mutual benefit of both ; and that the commencement of the action by the plaintiff against the administrator of Lyman Dorwin was the result of considerable negotiation between the plaintiff and the defendant, and of the express promise of the defendant to share equally in its expenses. Under the ruling of the court the jury have found that these facts were satisfactorily established by the testimony. The action which the plaintiff commenced against the administrator of Lyman Dorwin may therefore properly be considered as having been commenced " at the special instance and request " of the defendant, and for the purposes of the defendant as well as for those of the plaintiff. In *Adams* v. *Dansey*, 6 Bing. 505, (19 E. C. L.,) the plaintiff, an occupier of lands, having been sued with others by the vicar for tithes, gave up the occupation, and quitted the parish during the progress of the suit ; upon which the defendant, a land owner in the parish who had a similar interest in resisting the vicar's claim, undertook to indemnify the plaintiff from all costs if he would suffer the defendant to defend the suit in his, the plaintiff's, name ; and it was held that there was a sufficient consideration for the defendant's promise. So in *Goodspeed* v. *Fuller*, 46 Maine 141, it was held that if the defendant in a suit at law, at the request of a third person, permits him to assume the defence upon a promise of such third person to indemnify him and pay all costs recovered against him, such a promise was not void for want of consideration. It is not essential that the consideration should be adequate, in point of actual value, the law having no means of deciding this matter, and leaving the parties to the free exercise of their judgments in respect to the benefits to be derived from their bargains ; and

an injury to the party to whom the promise is made, as if he incurs expenses in reliance upon the promise, or a benefit to the party promising, is a sufficient consideration, if the agreement violates no rule of law. Cases are not unfrequent in which the prosecution or defence of suits affecting or involving a similar or common interest, as in the case of water or patent rights, may render the combination of the means of those having a similar interest to be protected or defended, a matter of the highest expediency. Where, in such cases, expenses have been incurred on the faith of an agreement by one having a similar or common interest that they shall be subsequently shared or paid by him, the consideration for such an agreement, it is believed, has never been questioned or doubted. We regard the fact that the plaintiff commenced and prosecuted his suit against the administrator of Lyman Dorwin at the instance of the defendant, and in reliance upon his agreement to share in its expenses, as furnishing a sufficient consideration for that agreement, if the agreement itself was lawful.

II. Was the defendant's agreement void as violating any rule of law, or as being against public policy? It is claimed by the defendant that the purpose of the agreement was to pervert or control the course of justice. This claim seems to rest upon the assumption that the mutual expectation of the parties, at the time of making the agreement, that the defendant would be called as a witness in the suit to be commenced by the plaintiff against the administrator of Lyman Dorwin, was itself a part of the agreement. We do not so interpret the statement in the bill of exceptions in reference to this mutual expectation. It may be conceded, as was held in *Stanley* v. *Jones*, 7 Bing. 369, (20 E. C. L.,) that an agreement, by one having no legal interest in the controversy, to procure and furnish evidence, has a direct and manifest tendency to pervert the course of justice, and is consequently illegal; but in this case there was no adventure by the parties for a speculation. They were mutually interested in reference to a supposed legal right, depending on the same question, and their purpose was to test the value of that right. That purpose was neither immoral nor unlawful. It is not expressed in the bill of exceptions that it was mutually expected that the

defendant would be called·as a witness with any corrupt design, or in furtherance of any corrupt purpose; and, in the absence of such a statement, we are not at liberty to presume that this mutual expectation of the parties that the defendant would be called as a witness contemplated that he should be called for any other than a legitimate and honest purpose. It is true that, as the law then stood, he would not have been permitted to testify, if objected to, on account of his interest in the event of the suit; but if that interest had been released, as it might have been, or if he was not objected to as disqualified by reason of interest, it would have been his duty, when called as a witness, to have given his testimony. We can not regard the mutual expectation of the parties, that the defendant would be called as a witness for the plaintiff, as equivalent to a contract between them to that effect; and it would, in our judgment, be a forced and unnatural interpretation of the statement of the bill of exceptions to give to it the effect of a contract. But the defendant also insists that this agreement was one for *maintenance*, and should not be tolerated on that ground. The doctrine of the ancient common law in respect to this offence has been much narrowed, and the offence itself seems now to be confined to the intermeddling of a stranger in a suit for the purpose of stirring up strife and continuing litigation. In *Danforth* v. *Streeter*, 28 Vt. 490, REDFIELD, Ch. J., suggests a doubt whether the offences of maintenance and champerty as they existed at common law are now recognized in this state. It was well said by Serjeant Wilde, *arguendo*, in *Stanley* v. *Jones*, *ubi supra*, that innumerable exceptions have been engrafted on the old law of maintenance, which, if it were construed according to the ancient rigor, would impede the whole course of modern business. In *Findon* v. *Parker*, 11 Mees: & W. 675, it was held that one may lawfully agree to promote a suit where he has reasonable ground to believe himself interested, although in·fact he is not so; and Lord ABINGER, C. B., after remarking that the old cases in respect to this offence are now exploded, said that " the sole question is, have the parties an interest, or do they believe they have an interest, in the action?" We are satisfied that this offence is not committed by parties who enter into an agreement

Dorwin *v.* Smith.

to maintain and defend each other in a matter in which they believe their interest to be identical. Such an agreement implies no unlawful intent, and does not, as we think, violate any rule of public policy. We therefore regard the defendant's agreement as being free from the objections which have been urged against it on the score of its illegality.

III. It is claimed that this was a contract to indemnify the plaintiff against his own debts, or to pay him a share of money which he might expend in the payment of his own liabilities, and that it was consequently within the mischief of the statute of frauds, and that the plaintiff's evidence did not support his declaration for the reason that the money paid by him, not being in discharge of any liability of the defendant, was not paid to the use of the defendant. The agreement, as disclosed by the case, was that the defendant should pay one-half of the expenses of commencing and prosecuting the suit, and the plaintiff's evidence tended to show that it was part of the original understanding that the plaintiff was to go forward and make the disbursements in the suit, and that the expenses, when ascertained, should be adjusted between the defendant and himself under the agreement. The promise of the defendant was not a contract to indemnify the plaintiff against the plaintiff's own debts, but was a direct undertaking to repay to him a share of the money which he might pay on account of the expenses of the suit, which were to be incurred at his instance, and in reliance upon his promise. The promise was therefore an original and not a collateral undertaking on the part of the defendant, and related to his own debt, and not to that of the plaintiff, and it is not within the statute of frauds as being a promise to pay the debt of another person ; *Adams* v. *Dansey,* and *Goodspeed* v. *Fuller, ubi supra.*

IV. The defendant insists that he was entitled to a verdict on the plea of *non assumpsit infra sex annos,* and also on the plea of *actio non accrevit infra sex annos.* The case shows that the plaintiff was to make the disbursements for the expenses of the suit, and that when those expenses were *ascertained,* they were to be adjusted between the defendant and himself according to the defendant's agreement. The plaintiff could have no cause

Dorwin *v.* Smith.

of action until he made the necessary payments resulting from the suit. The issue on the plea of *non assumpsit infra sex annos,* in this state of the facts, became wholly immaterial; for, if it had been found for the defendant, the plaintiff would still have been entitled to judgment upon the whole record; 1 Williams' Saund. 33, n. 2; 2 *ib.* 319 d.; 2 Chitty Pl. 498, note *q.* As the plaintiff's cause of action did not accrue until the expenses of the suit were in fact paid by him, the plaintiff was entitled to a verdict for one-half of the expenses paid within six years next before the commencement of the suit, and the issue upon the plea of *actio non accrevit infra sex annos* was properly found in his favor.

·V. We consider the facts stated in the case in respect to Toby's bill as being equivalent to such an actual payment of it in money by the plaintiff as would make the defendant liable for his share of it according to his agreement.

VI. The effect of the defendant's undertaking and conduct was to request the plaintiff to pay the expenses of the suit, for the purpose of effecting a common object in which they were mutually interested, and the plaintiff did pay those expenses. This was money paid by the plaintiff at the defendant's request. The common count in *indebitatus assumpsit* for money paid is maintainable in every case in which the plaintiff has paid money to a third party at the request, express or implied, of the defendant, and with an undertaking, express or implied, on his part to repay it; Chitty on Contracts, (10th Amer. Ed.,) 658–9; *Brittain* v. *Lloyd,* 14 Mees & W. 762, 773. The request to pay, and payment according to it, constitute the debt; and, for money paid for the use of another, interest is due from the time of payment; *Gibbs* v. *Bryant,* 1 Pick. 118; *Reid* v. *Rensselaer Glass Factory,* 3 Cowen 393, and S. C. in Error, 5 *ib.* 587; *Hodges et al.* v. *Parker et al.,* 17 Vt. 242.

We find no error in the decisions of the county court which were excepted to by the defendant, and the judgment of that court in favor of the plaintiff is affirmed.