EUGENE COLLETTE *v.* TOWN OF CHARLOTTE ET ALS.

November Term, 1945.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed January 8, 1946.

358

*Clarke A. Gravel* for the defendants.

*Samuel H. Rothman* for the plaintiff.

BUTTLES, J. This is a suit in chancery in which the plaintiff seeks an injunction restraining the defendants from interfering with a small parcel of land in the town of Charlotte, or with the building located thereon, and from selling, disposing of or removing said building, and prays that the court quiet the title to said land. The defendants answered, and after hearing by the chancellor findings of fact were filed and decree was rendered granting the plaintiff the relief prayed for. The case is here on the defendants' exception to the decree.

From the findings it appears that on October 2, 1895, Levi S. Scofield was the owner of a farm a small portion of which he conveyed on that day to the defendant Town by quit claim deed which provided that said land was "to be used by said Town for school purposes, but when said Town fails to use it for said school purposes it shall revert to said Scofield, his heirs and assigns, but the Town shall have the right to remove all buildings located thereon. The Town shall not have the right to use the premises for other than school purposes." It further appears that on September 21, 1909, the farm which embraced the parcel described in Scofield's deed to the Town was conveyed to this plaintiff by warranty deed. The allegations of the complaint which are admitted by the answer indicate that this deed was executed by William E. West and wife, and that there was an intermediate warranty deed of the farm from Scofield to West dated Nov. 4, 1902. It is also found that soon after the conveyance to the Town a school house was erected on the lot conveyed; that classes were taught therein continuously until June, 1936; that the building has been used since that time for storage of school supplies but it has not been used for "school purposes" since the fall of 1936 and that more than a reasonable time had elapsed on June 21,

1944, when the Town sold the school house to the defendant Boisvert.

■ The defendants' sole contention in this Court, as indicated by their brief and oral argument, is that after his deed to the Town the original grantor had only a possibility of reverter in the school house lot which he could not convey to the plaintiff's grantor, and by his attempted conveyance thereof such possibility of reverter was extinguished and the full fee in the Town confirmed. But this issue is not raised by the pleadings. By paragraph one of their answer the defendants admit that the plaintiff is the owner in fee of the land conveyed to West by Scofield on Nov. 4, 1902. Paragraph 7 alleges that title to the school building remains in the Town and by implication admits that it does not have title to the land. Paragraph 8 (b) denies that the Town failed to remove the building within a reasonable time "after the land on which said building stands reverted to the plaintiff," thus admitting such reversion. It seems clear therefore that the only issue raised by the answer is as to the building and that no question is made as to the title to the land. On the record before us we would be justified in refusing to consider the issue as to the land which is attempted to be raised for the first time in this Court. *Manatee Loan and Mtge Co.* v. *Manley's Estate,* 106 Vt 356, 363, 175 A 14; *People's Trust Co. of St. Albans* v. *Finn,* 106 Vt 345, 350, 175 A 4; *Stoddard and Sons* v. *Village of North Troy,* 102 Vt 462, 470, 150 A 148; *McAndrews* v. *Leonard,* 99 Vt 512, 519, 134 A 710.

■ But we pass this technical ground and give consideration to the claims made by the defendants' brief. On the questions involved in this claim there is considerable diversity of opinion among the courts of this country, some of which seems to be due to confusion in the use of terms and some to reluctance of some courts to follow the ancient common law in all respects. It should be remembered that our own statute, P. L. 1234, adopts as the law of this State only so much of the common law of England as is applicable to the local situation and circumstances and is not repugnant to our constitution and laws.

■ We first inquire as to the nature of the estate that the Town received from Scofield. A determinable or qualified fee, as that term is now generally used, is a fee simple limited to a per-

son and his heirs with a qualification annexed to it by which it is provided that it must determine whenever the qualification is at an end. Because the estate may last forever it is a fee and because it may end upon the happening of the specified event it is what is usually called a qualified or determinable fee. *Univ. of Vt.* v. *Ward,* 104 Vt 239, 246, 158 A 773; *Conn. Junior Repub. Assn.* v. *Litchfield,* 119 Conn 106, 174 A 304, 95 ALR 56, 62; *First Univ. Church* v. *Boland,* 155 Mass 171, 174, 29 NE 524, 15 LRA 231; *Lyford* v. *Laconia,* 75 NH 220, 72 A 1085, 1089, 22 LRANS 1062, 139 Am St Rep 680. Such an estate has sometimes been called an estate on a limitation, or on a collateral or a conditional limitation, there being authority however to the effect that the term "conditional limitation" properly applies only to a second estate granted at the same time with the first estate. Annot. 109 ALR 1148, 1149.

A fee upon condition resembles a determinable fee in that it exhausts the whole estate. It may return to the grantor because of the breach of the condition subject to which it was granted, but it does not return until there has been an entry by the person having that right. The only practical distinction between a right of entry for breach of condition subsequent and a possibility of reverter on a determinable fee is that in the former the estate in fee does not terminate until entry by the person having the right, while in the latter the estate reverts at once on the occurrence of the event by which it is limited. 33 Am Jur Life Estates, Rem. etc. § 205, p. 684; *Univ. of Vt.* v. *Ward, supra,* page 247 of 104 Vt; *Battistone* v. *Baluski,* 110 Conn 267, 147 A 820, 821; *Lyford* v. *Laconia, supra.* A slight change in the language of the deed would usually be sufficient to change a determinable fee into a fee upon condition subsequent, or vice versa.

It was held in *Fall Creek School Twp.* v. *Shuman,* 55 Ind App 232, 236, 103 NE 677, 678, that a conveyance of land "to be used for school purposes" without further qualification, created a condition subsequent. The same words were used in Scofield's deed to the Town of Charlotte, but they were followed by the provision that "when said Town fails to use it for said school purposes it shall revert to said Scofield, his heirs or assigns," clearly indicating the intent of the parties to create a determinable fee, which was, we think, the effect of the deed. *North* v. *Gra-*

*ham,* 235 Ill 178, 85 NE 267, 18 LRANS 624, 626, 126 Am St Rep 189.

■ A possibility of reverter is the type of future interest, if it may be properly designated as an interest, which remains in a grantor by deed, or his successor in interest or in a testator's heirs or devisees where, by grant or devise, there has been created an estate in fee simple determinable or an estate in fee simple conditional. Some authorities have also designated the right of re-entry for condition broken or the power of termination which remains in the grantor or his successors in interest or in the heirs or devisees of a testator where an estate on condition subsequent has been created as a "possibility of reverter." 33 Am Jur 682, Life Est. Rem. etc. § 204. Prof. Reeves in his work on Special Subjects of the Law of Real Property at page 724 says that this expression is now very commonly employed to indicate the bare chance that real property may return to one who has conveyed it in fee on limitation or fee on condition subsequent, but the mere chance of re-acquiring property conveyed in fee on condition subsequent, since the grantor or his heirs will not regain it except by enforcing a forfeiture by re-entering if the condition be broken, is more properly described as a possibility of forfeiture.

Such a possibility of forfeiture or right of re-entry is termed a power of termination by the A. L. I. Restatement of the Law of Property which takes the position in § 160 that except for three exceptions stated in § 161 the owner of a power of termination in land has no power to transfer his interest, or any part thereof, by a conveyance inter vivos. This statement as to the inalienability of such a right or power is in accord with the very general holding of the courts in those states in which the rule has not been changed by statute. See numerous cases cited in annotations in 109 ALR 1150; 117 ALR 564; 135 ALR 576.

Many American cases, no doubt a majority in number, have held that a true possibility of reverter resulting from the creation of a determinable or qualified fee, or a fee upon conditional limitation, meaning a determinable fee, is not alienable. Unquestionably this was the rule of the early common law, but some of the American authorities have departed from the common law rule and have held, upon what we think is the better reason, that such a possibility is alienable. *Fall Creek School Twp.* v. *Shuman.*

55 Ind App 232, 103 NE 677; *McBride v. F. and M. Gin Co.,* Tex Civ App, 152 SW 1135; *Stewart v. Blain,* Tex Civ App, 159 SW 928; *Kennedy v. Kennedy,* 183 Ga 432, 188 SE 722, 109 ALR 1143, 1147; *Slegel v. Herbine,* 148 Pa 236, 23 A 996, 999, 15 LRA 547; *Calhoun v. Hays,* 155 Pa Super 519, 39 A2d 307; A. L. I. Restatement of Property Vol. 2, § 159, which states that the owner of any reversionary interest in land has the power, by an otherwise effective conveyance inter vivos, to transfer his interest or any part thereof. Comment A following this section says that "reversionary interest" as used therein includes all reversions and possibilities of reverter but does not include a power of termination. In *Calhoun v. Hays, supra,* the court quotes and follows the A. L. I. Restatement. This rule has been recognized in *Congregational Society v. Stark,* 34 Vt 243.

 The reason most commonly given at common law for the rule of inalienability was that to hold a mere possibility of reverter alienable would encourage litigation and commission of the offense of maintenance. But the doctrine of the ancient common law in respect to maintenance has been much narrowed in this State and the offense itself seems now to be confined to the intermeddling of a stranger in a suit for the purpose of stirring up strife and continuing litigation. *Dorwin v. Smith,* 35 Vt 69, 74. It is clear that there could be no maintenance as a result of the conveyance of a possibility of reverter which would vest as an estate in the grantee automatically if at all. When, as here, the parties appear to have understandingly reached an agreement and to have embodied it in their deed providing that upon termination of the estate conveyed it shall revert to the grantor, his heirs or assigns, such provision should not be held void, in whole or in part, unless for sound reasons of public policy. See *Stewart v. Blain, supra,* page 930 of 159 SW. Our present situation and circumstances are not such as to require us to follow the common law rule in this matter. The statement is made in *Univ. of Vt. and S. A. College v. Ward,* at page 246 of 104 Vt, that a possibility of reverter is incapable of alienation or devise. The question at issue in that case was whether the instrument through which the defendant claimed title was a lease or a conveyance of a base or determinable fee. The alienability of a possibility of reverter was not in issue or relevant to the issue presented, and the statement

above referred to is not to be considered authoritative as to a possibility of reverter resulting from the creation of a qualified or determinable fee.

■ We hold that when the land in question ceased to be used by the defendant Town it reverted to the plaintiff.

*Judgment affirmed.*