VERMONT SUPERIOR COURT
Environmental Division
32 Cherry St, 2nd Floor, Suite 303,
Burlington, VT 05401
802-951-1740
www.vermontjudiciary.org



Docket Nos. 3-1-19 Vtec
4-1-19 Vtec

| Capitol Plaza 2 Lot Subdivision & Capitol Plaza Major Site Plan |
| --- |

## ENTRY REGARDING MOTION

Title:           Motion for Protective Order (Motion: 12)
Attorney:    James A. Dumont
Filed Date:   June 17, 2020
Response in opposition filed by Attorney Joseph S. McLean on July 1, 2020

The motion is **GRANTED IN PART** and **MOOT IN PART**

These coordinated appeals relate to a parking garage and associated subdivision (the Project) proposed by the City of Montpelier (the City). The City applied for subdivision and Major Site Plan approval in connection with the Project, and the Montpelier Development Review Board (DRB) approved both applications. John Russell and Les Blomberg (together, Appellants) appeal the DRB's decisions. The appeals were filed on January 8, 2019. The subdivision appeal was assigned Docket No. 3-1-19 Vtec, while the site plan appeal was assigned Docket No. 4-1-19 Vtec.

Appellants are represented by James A. Dumont, Esq. The City is represented by David W. Rugh, Esq. and Joseph S. McLean, Esq. Interested party Capitol Plaza Corporation is represented by Jeffrey O. Polubinski, Esq. Currently before the Court is Appellants' Motion for Protective Order.

### Discussion

Appellants' motion initially asked the Court to bar disclosures sought by three of the City's requests to produce (RTPs): RTPs 2, 3, and 7. Appellants have since withdrawn their motion as it relates to RTPs 2 and 3, therefore the remaining issue is whether they must respond to RTP 7. RTP 7 asks Appellants to disclose:

> All documents, records, and correspondence related to the Project and the above-captioned appeals among and between Appellants or their legal counsel and any person or entity providing financial or other material support, in whatever form, to Appellants in connection with their appeal.

Answers to City of Montpelier's First Set of Interrogatories and Requests to Produce at 32, filed July 20, 2020.

In essence, the City seeks information about third-party individuals whose donations have helped Appellants to bring these coordinated appeals.[1] The City argues that the requested documents should be produced "because they will likely indicate whether Appellants have engaged in the common law offenses of champerty and maintenance," which the City asserts "could lead to the dismissal of these appeals." City of Montpelier's Memorandum in Opposition to Appellant's Motion for Protective Order at 16, 1, filed July 1, 2020. Appellants contend that the requested information is outside the scope of discovery because it is irrelevant under V.C.R.P. 26, and that a protective order is warranted to preserve the privacy rights of third-party donors.

The first question is whether the information sought by RTP 7 is within the proper scope of discovery. In general, parties are permitted to make inquiries "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." V.R.C.P 26(b)(1). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." V.R.E. 401. In proceedings before the Environmental Division, the Court is also directed by statute to "limit discovery to that which is necessary for a full and fair determination of the proceeding." 4 V.S.A. § 1001(g)(3); see also Reporter's Notes, V.R.E.C.P. 2(c) ("The statutory directive . . . calls for the court to order no more nor less discovery than is required to [ensure a full and fair determination]."). Thus, we must determine whether information about third parties, which may implicate the doctrines of champerty or maintenance, is relevant to the City's defense and necessary for a full and fair determination of these appeals.

Champerty and maintenance are often referred to as "ancient" doctrines of common law, whose force and applicability have been significantly reduced over time. See, e.g., Collette v. Town of Charlotte, 114 Vt. 357, 362 (1946) ([T]he doctrine of the ancient common law in respect to maintenance has been much narrowed in this State . . . ."); Douglas R. Richmond, Other People's Money: The Ethics of Litigation Funding, 56 Mercer L. Rev. 649, 653 (2005) ("The doctrines of champerty and maintenance qualify as obscure . . . . Several jurisdictions have done away with the doctrines entirely. . . ."). Though the two doctrines are separate, they are sometimes conflated. See Danforth v. Streeter, 28 Vt. 490, 497 (1856) (noting that "the old common law offence of maintenance or champerty [has been] reduced within very narrow limits").

Maintenance is the broader of the two, generally defined as "maintaining, supporting or promoting the litigation of another . . . as an officious intermeddler and . . . without any interest in the litigation." 7 Richard A. Lord, Williston on Contracts § 15:1 (4th ed.). The definition has been narrowed in Vermont to "the intermeddling of a stranger in a suit for the purpose of stirring

---

[1] Appellants' counsel confirms that Appellants have sought and received donations from third parties. Counsel also avers that "[t]he only persons who have influenced, directed, or controlled my professional judgment are the clients." Affidavit of Counsel in Support of Appellants' Motion for Protective Order at ¶ 7, filed June 17, 2020; see also Affidavit of Les Blomberg at ¶¶ 17–18, filed June 17, 2020.

up strife and continuing litigation." Collette, 114 Vt. at 362 (citing Dorwin v. Smith, 35 Vt. 69, 74 (1862)). Champerty, which can be characterized as a subset of maintenance, is "an agreement between the owner of a claim and a volunteer that the latter may take the claim and collect it, dividing the proceeds with the owner, if they prevail—the champertor to carry on the suit at his own expense." D'Amato v. Donatoni, 105 Vt. 496, 507 (1933) (citing Hamilton v. Gray, 67 Vt. 233, 235 (1895)). Put simply, "[c]hamperty is a bargain to divide the proceeds of litigation between the owner of the litigated claim and the party supporting or enforcing the litigation." 7 Williston on Contracts § 15:1.

Appellants appear to argue that both champerty and maintenance have been superseded by modern ethical rules and that the doctrines do not apply here, thus RTP 7's request for donor information is not relevant to these appeals. Though we agree that the information sought is not relevant and is therefore outside the scope of discovery, our conclusion is based on additional considerations. See V.R.C.P. 26(b)(2)(B)(iii) ("On motion or on its own, the judge must limit the frequency or extent of discovery otherwise allowed by these rules if it determines that . . . the proposed discovery is outside the scope permitted by [V.R.C.P. 26(b)(1)].").

To begin, we note that the Environmental Division is a Court of limited appellate jurisdiction. In the context of these zoning appeals, we can only review those issues that the municipal panel below had the authority to address when considering the original application. See In re Transtar, LLC, No. 46-3-11 Vtec, slip op. at 4 (Vt. Super. Ct. Envtl. Div. May 24, 2012) (Durkin, J.). On the rare occasions when the doctrines of champerty and maintenance appear, they are generally invoked as contract defenses in civil actions. See, e.g., Dorwin v. Smith, 35 Vt. 69, 73 (1862); Sec. Underground Storage, Inc. v. Anderson, 347 F.2d 964, 969 (10th Cir. 1965) ("The decisional law of today dealing with the subject usually involves the validity of contracts asserted to be violations of the doctrine.") (citations omitted). Independent causes of action for champerty and maintenance did exist but are now obsolete in many jurisdictions. See, e.g., Sec. Underground Storage, 347 F.2d at 969 (indicating that the "ancient rule" has been replaced by more modern tort remedies); Hardick v. Homol, 795 So. 2d 1107, 1110 (Fla. Dist. Ct. App. 2001) (citing discussions of Florida, New York, and Kansas law).

The City argues that champerty and maintenance remain applicable in Vermont, and that the presence of either would warrant dismissal of these appeals. If we assume that this Court's limited jurisdiction would allow us to weigh evidence related to the conduct of third parties and reach conclusions on the doctrines at issue, the City still offers no authority for the proposition that the presence of champerty or maintenance should lead to the dismissal of zoning appeals brought by appellants who have demonstrated their status as interested persons; participated in the municipal process below; and have a statutory right of appeal. See In re Capitol Plaza 2-Lot Subdivision & Major Site Plan, Nos. 3-1-19 and 4-1-19 Vtec, slip op. at 3, 12–13 (Vt. Super. Ct. Envtl. Div. Nov. 12, 2019) (Walsh, J.) (granting Appellants' motion to intervene as interested persons); see also 24 V.S.A. §§ 4465(b)(3), 4471(a). To examine the City's position further, we address each doctrine in turn.

As we have said, champerty requires an agreement or bargain to "divid[e] the proceeds" of litigation between the rightful claimant and a person who advances or enables the litigation.

See D'Amato v. Donatoni, 105 Vt. 496, 507 (1933). The coordinated appeals before us concern municipal permitting decisions; there is no possibility of recovering money or property. Because there are no "proceeds" to divide, it appears that the elements of champerty cannot be satisfied. See id.

Even if the doctrine could be stretched to include agreements to divide other, more indirect gains from litigation, it is doubtful that the City would have standing to challenge an allegedly champertous agreement. See 14 C.J.S. Champerty and Maintenance § 23 ("Only the parties to the champertous contract . . . have standing to assert a defense or causes of action."). And even assuming the City could advance its theory in these proceedings, it appears settled that a defendant cannot raise the existence of a champertous contract as a defense against unrelated claims by a bona fide plaintiff. See id.; Ari Dobner, Litigation for Sale, 144 U. Pa. L. Rev. 1529, 1548 n.92 (1996) (citing L.S. Tellier, Annotation, Assertion of Defense of Champerty in Action By Champertous Assignee, 22 A.L.R. 2d § 3, at 1011 (1952) ("[T]here is almost no precedent holding that an action by a bona fide plaintiff can be dismissed by virtue of [the] plaintiff's champertous agreement with a third party."); Sneed v. Ford Motor Co., 735 So. 2d 306, 315 (Miss. 1999) ("If we had determined the agreement at issue to be champertous, then it would have been a void contract . . . . But that would not have had any bearing on the rights of the Plaintiffs to continue the prosecution of their action.").

Appellants are interested persons with a statutory right of appeal, and they seek no recovery or remedy beyond judicial review of municipal permits. As such we cannot identify, nor has the City provided, any reason why the doctrine of champerty would provide a defense or require the dismissal of these appeals. If champerty has no effect here, it follows that information related to Appellants' interactions with third-party donors does not help to establish facts "of consequence to the determination of the action" nor is it "necessary for a full and fair determination." See V.R.E. 401 (defining relevant evidence); 4 V.S.A. § 1001(g)(3) (setting a limited standard for discovery). We conclude that the information sought by RTP 7 for purposes of a champerty defense is not relevant and is therefore outside the scope of discovery. See V.C.R.P. 26(b)(1).

We reach the same conclusion regarding information sought by RTP 7 for purposes of a maintenance defense. Presumably, the City hopes to use donor information to show "the intermeddling of a stranger in [the] suit for the purpose of stirring up strife and continuing litigation." Collette v. Town of Charlotte, 114 Vt. 357, 362 (1946). Once again, assuming the Court's limited jurisdiction would extend to claims of maintenance, we see no avenue for the doctrine to impact these proceedings. First, although this issue has not been addressed by Vermont courts, it appears that the Vermont Rules of Professional Conduct (V.R.P.C.) sanction third-party funding of legal services and guard against the kind of "officious intermeddler" targeted by the maintenance doctrine.[2] See, e.g., V.R.P.C. 1.8(f) ("[A] lawyer shall not accept compensation for representing a client from one other than the client unless: (1) the client gives informed consent; (2) there is no interference with the lawyer's independence . . . or with the

---

[2] Appellants' counsel represents that he has complied with applicable provisions of the V.R.P.C.

lawyer-client relationship . . . ."); see also 14 Am. Jur. 2d <u>Champerty, Maintenance, Etc.</u> § 1 ("Causes of action for maintenance and champerty were supplanted by causes of action for malicious prosecution and abuse of process . . . and rules of professional conduct for attorneys. . . .").

Second, we do not see how a third party could "stir[] up strife and continuing litigation" by supporting or even encouraging Appellants to bring an appeal which they are entitled to bring by statute. See <u>Collette</u>, 114 Vt. at 362; see also 24 V.S.A. § 4471 ("An interested person who has participated in a municipal regulatory proceeding . . . may appeal a decision rendered in that proceeding . . . ."). The statutory and constitutional standing requirements serve to prevent improper appeals, and Appellants' standing has not been questioned since the Court's decision granting their motion to intervene as interested persons. See <u>In re Capitol Plaza</u>, Nos. 3-1-19 and 4-1-19 Vtec at 12–13 (Nov. 12, 2019). Furthermore, this Court's limited jurisdiction quickly weeds out issues which are not germane. It is also worth noting that Appellants' participation in zoning review for the Project at the municipal level predated their need for financial assistance.

Third, as with champerty, there is no indication that a defendant can raise maintenance as a defense against unrelated claims by a bona fide plaintiff. See 14 C.J.S. <u>Champerty and Maintenance</u> § 23 ("A third party who is not party to an agreement cannot raise the agreement's nature as a . . . maintenance contract as a defense to claims between it and a party to the agreement"); Richmond, <u>supra</u>, at 654 ("[A] defendant generally cannot seek to void a litigation funding agreement in the name of champerty or maintenance and in this way defeat the plaintiff's suit."). Again, the City has not offered nor are we aware of any reason why the doctrine of maintenance would provide a defense or require the dismissal of these appeals. Thus, information related to Appellants' interactions with third-party donors does not help to establish facts "of consequence to the determination of the action" and is not "necessary for a full and fair determination." See V.R.E. 401; 4 V.S.A. § 1001(g)(3). The information sought by RTP 7 for purposes of a maintenance defense is not relevant and is therefore outside the scope of discovery. See V.R.C.P. 26(b)(1).

## Conclusion

For all the reasons above, we conclude that RTP 7 seeks information outside the scope of discovery and therefore the City is not entitled to documents, records, or correspondence between Appellants or their counsel and the persons or entities providing them with financial or other material support. Appellants' motion is **GRANTED** to the extent that it sought a determination on the scope of discovery. Appellants are not required to respond to RTP 7. See V.R.C.P. 26(b)(2)(B)(iii); V.R.E.C.P. 2(c).

Because we conclude that the information sought by RTP 7 is outside the scope of discovery, Appellant's motion is **MOOT** to the extent it seeks a protective order. See V.R.C.P. 26(c).

So Ordered.

Electronically Signed: 12/9/2020 12:07 PM pursuant to V.R.E.F. 9(d).

Thomas G. Walsh, Judge
Superior Court, Environmental Division