## GEORGE W. RASH vs. JOHN R. PRATT.

1. **HUSBAND AND WIFE —DECLARATIONS OF WIFE ADMISSIBLE TO SHOW LACK OF AFFECTION BEFORE ACQUAINTANCE WITH DEFENDANT.**

In an action for alienation of the affections of plaintiff's wife, declarations made by the wife before her acquaintance with defendant which showed a lack of affection for her husband at that time are admissible on behalf of defendant.

2. **HUSBAND AND WIFE —"CRIMINAL CONVERSATION" DEFINED; "ADULTERY."**

"Criminal conversation" means "adultery" which is sexual intercourse by a man and woman, one of whom is married to another person.

3. **HUSBAND AND WIFE—MEASURE OF DAMAGES FOR CRIMINAL CONVERSATION AND ALIENATION OF AFFECTIONS STATED.**

In action for criminal conversation, the measure of damages is the husband's mental suffering and the loss of the affections of his wife and the comfort of her society, as well as the pecuniary loss of her services, and for alienation of the wife's affections the measure of damages is the value of her services and her society, affection and assistance, less, however, in either case, the value of the performance of the husband's duty to support his wife.

4. **HUSBAND AND WIFE—Prior LACK OF AFFECTIONS ONLY MITIGATES DAMAGES.**

In action for alienation of affections, the fact that plaintiff and his wife lived unhappily together before defendant appeared, or even were estranged, does not bar plaintiff's action, but only goes in mitigation of damages, as showing that plaintiff suffered less injury than would otherwise be a probable inference from the act complained of.

5. **HUSBAND AND WIFE—ACTS OF DEFENDANT MUST BE CONTROLLING CAUSE OF LOSS OF WIFE'S AFFECTION.**

In an action for alienation of wife's affection, plaintiff cannot recover, unless the misconduct of the defendant was the controlling cause of the loss of the wife's affections.

6. **EVIDENCE—JURY SHOULD ATTEMPT TO RECONCILE TESTIMONY.**

In all cases where there is conflict of testimony or disagreement between the witnesses, the jury should first attempt to reconcile the testimony, so that the whole may be harmonious.

7. **EVIDENCE—IF TESTIMONY CANNOT BE RECONCILED, JURY MUST WEIGH IT, AND GIVE VERDICT ACCORDING TO PREPONDERANCE.**

Where the testimony of the witnesses produced by the different parties cannot be reconciled, the jury should weigh the value of the testimony on the respective sides, considering the character of the witnesses, their means of knowledge, and apparent fairness, and give verdict to that side where the tesitmony is of the greatest weight or preponderance, and most worthy of credit.

(*April 26, 1920.*)

PENNEWILL, C. J., and BOYCE, J., sitting.

*Thomas C. Frame, Jr., and J. Hall Anderson* for plaintiff.

*James M. Satterfield* and *W. Watson Harrington* for defendant.

Superior Court for Kent County, April Term, 1920.

*Trespass, No.* 36, October Term, 1917.

Action by George W. Rash against John R. Pratt for damages for alienation of wife's affections. Verdict for defendant.

The plaintiff, who was a widower, about 62 years of age, almost totally deaf, and having several children, testified that in 1912 he read in a newspaper an advertisement of a lady living in Canada who desired a position as housekeeper, which he answered, suggesting that she come to see him at his home, which she did; that about a week later they were married, and for two years lived happily together, she being kind to him, good to his children and all that could be desired; that such relations continued until his wife became acquainted with the defendant, and he (Rash) and his wife went, at defendant's request, to live on one of defendant's farms; that the visits of the defendant to this farm soon became very frequent, and his relations with plaintiff's wife intimate; that he would assist her in washing dishes, making bread and performing her other household duties; that he (plaintiff) on one occasion peeped through the window, under the blinds, and saw the defendant lying on a couch with his wife; that his wife soon became cold towards him and her manner and treatment toward him very different from what they had been; that a short time later she left him, but, after much persuasion, returned to live with him; that she soon left again, for good, taking their boy, about two years of age, whom he loved, with her; that she could not be induced to return to him, but that the defendant continued to visit her; that he loved his wife, provided her a comfortable home, proper food and clothing, and that nothing but the attention of the defendant won her affections and ruined his home. A daughter of plaintiff testified that she saw her stepmother and Mr. Pratt at times sitting or lying on the lounge and hugging and kissing. And a boy from an adjoining farm, who visited the Rash

children, testified that he once saw Mrs. Rash with her arms around the defendant; also that he saw Pratt in a room with Mrs. Rash with the door closed and the blinds down at the windows.

Pratt testified that he rented the farm on shares in April or May, 1914, to a young man named Brown, a brother of Mrs. Rash; that Rash, some time in the fall, after his wife had left him and come on the farm to live with her brother, moved there with his children; that Brown went to war, leaving the farm on his (Pratt's) hands; that he hired help to carry on the farm who lived with Rash; that he furnished provisions for the help and Mrs. Rash did the cooking for them for which he paid her $3 per week; that he lived some distance from the farm, but frequently drove over to look after the work of the hands, the stock, crops, fruit, etc.; that on one occasion he found Mrs. Rash sick and that he did cooking for the men; that he had considerable repairing done on the house which required his presence more frequently; that after Mrs. Rash left he gave Rash notice to quit the premises, but he remained on the farm until he (Pratt) instituted legal proceedings against him; that Rash sued him in this action on the day of the hearing in court; that Rash then moved from the farm. Pratt denied that he was ever on the lounge with Mrs. Rash, or in any manner unduly intimate with her while on the farm or since she left it; and he specifically denied each and every the acts of intimacy testified to by the plaintiff and his witnesses; that when he was about the house, either some of his help or the children were there; that Rash never made any complaint to him about any improper relations with his wife; that after Mrs. Rash left her husband on the farm, he (Pratt) continued to go there as before, and frequently ate his meals, which he brought from his home, with Rash and his children, at his table, at his request; that he was in no way responsible for Mrs. Rash leaving her husband.

One of the colored men working on the farm while Rash, his wife, and children were there, testified that he had heard Mr. Rash curse his wife and accuse her of improper conduct with "us colored labor." This testimony was corroborated by the wife

of the witness and another person. Another witness testified that after Mrs. Rash had left her husband, and after Rash had left the Pratt farm—

"Mr. Rash called me. He said: 'Rachel, come here.' I went to the door. He said: 'Is that John Pratt?' I said: 'Yes, sir'. He said: 'Go and tell him to come here. I want him.' I said: 'Yes, sir.' I said: 'Mr. Pratt, when you hitch, Mr. Rash wants to see you.' He said: 'All right.' He went in there. He said: 'John, get a chair and sit down here beside me.' Well, he did it, of course. He laid his hand on Mr. Pratt's knee. He said: Mr. Pratt, you have done me lots of favors.' 'Mr. Pratt just shook his head and laughed. He said: 'You are a man I like. You are a good-hearted man. I once blamed you for my wife leaving me, but now I do not.'"

Rash denied this conversation.

Persons about the farm and premises while Mrs. Rash was there testified that they saw no improper conduct between her and the defendant.

Mrs. Rash testified that it was because of drunkenness, and the cruel and abusive treatment and nonsupport of her by her husband that made it necessary for her to leave him, and go home to her mother in Canada, but soon thereafter, at the solicitation of her mother, she returned to him; that because of like treatment she left her husband again and went to her brother, who was a tenant on defendant's farm in Kent county. She denied that her husband requested her to move to the Pratt farm, or that she knew he was coming there after she left him and went to live with her brother; that she again left him because of his abuse and ill treatment while they were on the farm and never returned to live with him. She denied each and every charge of intimacies with the defendant made by her husband.

W., called to testify on behalf of the defendant, after stating that she is a nurse, was asked:

Q. Did Mrs. Rash make any statements to you in 1913 in relation to her husband, and, if so, what?

Mr. Frame: I object.

Mr. Harrington: The question is whether the separation was caused by Mr. Pratt or by the plaintiff. Mr. Wigmore lays it down that, in a case like this, any evidence to show the state of feelings of the wife toward her husband—anything she may have

said to a third person showing her feelings toward her husband—
is admissible. Evidence of this character is let in, such as (1)
declarations made by the wife at the time of, or immediately be-
fore or after, complaint by the husband, as a part of the res gestæ;
(2) declarations made by the wife at any time to third persons of
her feelings toward her husband, not as a part of the res gestæ
but as an index of her feelings toward her husband. 1 *Ency, of
Ev.* 757; 1 *Greenl. on Ev.* § 102; 21 *Cyc.* 1624; 3 *Wig. on Ev.*
§1729; *Roesner v. Darrah.* 65 *Kan.* 599, 601, 602, 70 *Pac.* 597;
*Perry v. Lovejoy,* 49 *Mich.* 529, 533, 534, 14 *N. W.* 485; *Rose v.
Mitchell,* 21 *R. I.* 270-272, 43 *Atl.* 67; *Ash v. Prunier,* 105 *Fed.*
722, 724, 44 *C. C. A.* 675; *Horner v. Yance,* 93 *Wis.* 352-
354, 67 *N. W.* 720; *Palmer v. Crook,* 7 *Gray (Mass.)* 418-420;
*Preston v. Bowers,* 13 *Ohio St.* 11, 12, 82 *Am. Dec.* 430; *Fratini
v. Caslini,* 66 *Vt.* 273, 275, 29 *Atl.* 252, 44 *Am. St. Rep.* 843.

PENNEWILL, C. J. We will admit this testimony, subject
to a motion to strike out.

Q. Did Mrs. Rash make any declarations to you in the year
1912 in relation to her husband's treatment of her, and her feel-
ings toward him?

A. Not in 1912, she didn't.

Q. In what year did she make them?

A. 1913.

Q. What, if anything, did Mrs. Rash say to you on the oc-
casion that you have just referred to in relation to her feelings
toward her husband?

A. She told me she couldn't love him. She said he didn't
use her right. He drank, and was abusive; and he was too hard
of hearing. Any time she spoke to him about it he was insanely
jealous about it, and it was awful trying on her nerves; she couldn't
stand it. She would be a nervous wreck if she had to live with
that old man.

Q. Did you have any other conversation with Mrs. Rash
the latter part of 1914, before she went to the Pratt farm, in rela-
tion to her feelings toward her husband?

A. I certainly did.  Her mother and Mrs. Rash came to my house.  It was in 1914, and they wept most all of the afternoon, sat there crying and talking about her marriage to this man.

Mr. Frame:  I object.

PENNEWILL, C. J.  The objection is overruled, subject to a motion to strike out.

Mr. Frame:  I now move to strike out all of the testimony of the last witness, who testified yesterday before adjournment, on the ground of irrelevancy.

PENNEWILL, C. J.  Just before the adjournment of the court yesterday afternoon, in order to allow a witness, who could not return today, to be examined, as well as to hasten the trial of the case, the court permitted her to testify that the plaintiff's wife made admissions to her which indicated that she had no love or affection for her husband before there were any relations between the wife and the defendant.  This testimony was admitted, however with the understanding that if the court should conclude, after an examination of the law, that it was inadmissible, it would be stricken  out.

[1]  We are now satisfied that such testimony was admissible on the ground that, as the plaintiff seeks to recover damages for the alienation of his wife's affections by the  defendant, it is permissible for the defendant to prove, if he can, that the wife had no affection for her husband.  And this may be proved, not only by the testimony of the wife, but by her admissions made to a third party before there were any relations between her and the defendant, and showing that the wife's affections, if lost to the husband, were not alienated by the defendant.

This seems to be a new question in this state, but it has been passed upon in other jurisdictions where such testimony was admitted;  and we find no authorities to the contrary.

It should be noted that the wife is not the defendant, and her admissions are, therefore, not open to the objection of being self-serving, neither are they "hearsay" evidence Within the meanng of the rule which excludes such evidence.

The motion to strike out the testimony of Mrs. Wrench, the witness referred to, is refused.

### PLAINTIFF'S PRAYERS.

Even though a man and his wife be living apart and have no affection for each other at the time of the alleged offense of the defendant, yet no other man, while the marriage tie exists, may lawfully commit adultery with the wife without being liable to the husband, because the law presumes that there is always a chance of reconciliation. *Prettyman vs. Williamson*, 1 *Pennewill*, 238, 239, 39 *Atl.* 731.

It would not be in the interest of good order or of public morals to permit a wife's seducer to set up a disagreement between husband and wife, or even a separation, as a complete defense, but only in mitigation of damage. 1 *Pennewill*, 239, 240, 39 *Atl.* 731.

If the jury believes defendant committed adultery with complainant's wife, their verdict should be for the plaintiff, no matter what they may believe plaintiff's treatment was of his wife. 8 *A. & E. Ency. Law*, 261.

If defendant committed adultery with plaintiff's wife, the law presumes him guilty of willful and malicious conduct, and may give plaintiff punitive damages as a punishment to defendant and as an example to others, as the act of adultery is in its very nature willful and malicious in law. *Prettyman v. Williamson*, 1 *Pennewill*, 224, 241, 39 *Atl.* 731.

To recover, plaintiff need not prove a specific money loss or damage. *Id.*

The jury should consider the financial worth of the defendant, as it shows his pecuniary ability to respond in damages. *Id.*

If the jury believes defendant did not commit adultery, but by his attentions, actions and deportment to ward plaintiff's wife alienated or partly alienated her affections form her husband, then the plaintiff is entitled to recover damages. *Id.*

The defendant requested the court to instruct the jury upon the law applicable to the case as laid down in *Prettyman v. Williamson*,

1 *Pennewill*, 224, 39 *Atl*. 731, and *Lupton v. Underwood*, 3 *Boyce*, 519, 85 *Atl*. 965. .

PENNEWILL, C. J. (charging the jury). This is an action brought by George W. Rash, the plaintiff, against John R. Pratt, the defendant, to recover damages which he alleges he sustained by reason of an injury or wrong committed by the defendant.

[2] In his declaration, the plaintiff charges the defendant with criminal conversation or adultery with his wife and also with alienating his wife's affections, whereby he caused her to leave the plaintiff and his home and family. We may say to you that criminal conversation in legal contemplation means adultery, which is sexual intercourse by a man and a woman, one of whom is lawfully married to another person.

The defendant denies that he committed the injury or wrong complained of and has pleaded not guilty to the charges of the plaintiff.

Under the law, the husband is entitled to the society, comfort, fellowship, assistance and services of his wife, and whoever, by the alienation of her affections, deprives him thereof, commits a wrong against the husband for which he is liable to respond in damages.

[3] Criminal conversation, as above stated, is an action for damages caused by adultery with the wife, and the husband's injury by the wrong consists in his mental suffering from the dishonor of the marriage bed, and the loss of the affections of his wife, and the comfort of her society, as well as the pecuniary loss of her services; and where the basis of the action is the alienation of the wife's affections, the measure of damages is the value of her services and her conjugal society, affection and assistance, less, however, in either case, the value of the performance of the husband's duty to support, clothe, cherish and care for her. In either case, according to the modern doctrine and the later decisions, the action is based mainly on what is termed the "loss of the consortium"; that is, the loss of the conjugal society, affection and assistance of the wife, and it is not essential to the

maintenance of the action that there should be any pecuniary loss whatever.

In actions of this character there are two kinds of defense, the one going to the complete bar and absolute defeat of the action and the other going not to the bar of action, but in mitigation or reduction of the damages. A defense of the first kind would be that he did not commit the wrong and injury complained of.

[4] In the matter of mitigation or reduction of damages, which is the second class or kind of defense referred to, there are many things which may be considered and which it is right and proper that the jury should consider so far as disclosed by the testimony produced in the case. The extent of the actual injury to the husband will, of course, depend on the prior relations between him and his wife, and the practical consequences between them of her defection. Evidence in mitigation or reduction of damages will, therefore, be received which tends to show that the plaintiff has in fact suffered less injury than would otherwise be a probable inference from the act complained of. It is proper, therefore, for you to consider, in mitigation or reduction of damages, any evidence which shows that prior to the wife's relations with the defendant the relations between her and her husband were unhappy; that they were wanting in affection for each other; that there was but slight intercourse between them; that he was cruel and unkind in his treatment of her; that he failed to support her; and any misconduct on his part tending to show their unhappy relations or lack of affection.

[5] In order to find a verdict for the plaintiff in this case you must be satisfied from the testimony, and you must be satisfied from the preponderance—that is, the weight—of the testimony, that the defendant comitted the injury or wrong of which the plaintiff complains. If you believe that the acts and conduct of the defendant were the controlling cause of the wrong or injury complained of, and without which it would not have occurred, the action could be maintained, although there were other causes contributing . thereto. But if, on the contrary, you believe that such wrong or injury occurred by reason of the cruelty or mis-

conduct of the husband, the plaintiff, or other cause than the defendant, and are not satisfied from the testimony that the acts and conduct of the defendant were the controlling cause, then your verdict should be for the defendant; unless you believe that the defendant by obtaining the affections of the wife prevented or obstructed a reconciliation between the husband and his wife which the policy of the law as well as the good of society encourages and demands, because even if the wife had no affection for her husband, another person has no right to interfere, to cut off all chances of its springing up in the future.

The fact that the plaintiff and his wife lived unhappily together before the defendant appeared and even were much estranged would not constitute a bar to the plaintiff's action but would go, as we have already said, in mitigation of damages.

[6, 7] In all cases where there is conflict of testimony or disagreement between the witnesses produced by the respective parties in a suit, the jury should first endeavor to reconcile the tesitmony so that the whole may be harmonious. If this cannot be done, then it is the duty of the jury to estimate and weigh in their minds the value of the testimony on the respective sides and give their verdict to that side where the tesitmony is of the greatest weight or preponderance and most worthy of credit. In estimating such weight the jury are to consider the character of the witnesses as known to them from the testimony, their means of knowledge of the facts about which they speak, and apparent fairness, and all other circumstances or facts with respect to such witnesses as show the reliability of their statements.

If you should conclude, after carefully and fairly considering and weighing all the testimony as you have heard it from the witnesses, and applying the law as the court has declared it to you, that the defendant committed adultery with the wife of the plaintiff, then your verdict should be for such amount as in your judgment will compensate the plaintiff for his mental suffering from the dishonor of the marriage bed and the loss of the affections of his wife and the comfort of her society, as well as the pecuniary loss of her services. It is for you to say whether from the evidence

it is shown that the defendant did commit adultery with the wife of the plaintiff. If you should believe that there is no. proof of adultery in this case, but are satisfied that the defendant did alienate the affections of plaintiff's wife, your verdict should be for such amount as in your judgment will compensate the plaintiff for the loss of his wife's services and the marital consort; less, however, in either case, the value of the husband's duty to support, clothe, cherish and care for her. Such damage would be compensatory damages.

If you believe from a preponderance of the evidence that the defendant willfully and maliciously committed the injury or wrong complained of in this action, you may, in addition to any compensatory damages that you think h'm entitled to, award to the plaintiff such damages as you may consider proper as a punishment to the defendant and an example to others. But we say to you that such damages are based on the enormity of the offense and its malicious, willful and aggravated character, and you must be satisfied that such was the character of the offense before you can award damages of this kind. It has been held by this court heretofore that—

"It was a question for the jury to say whether there were circumstances of aggravation in the case which ought in their judgment to require a departure from the general rule of compensatory damages, and which called on them to add anything by way of public example or punishment."

In conclusion we say, if you are satisfied that the defendant was guilty of adultery with plaintiff's wife, and are not satisfied that he was the controlling cause of the plaintiff's loss of his wife's affection, services and society, your verdict should be for the defendant.

Verdict for defendant.