## Gladys G. Fox, Appellee, v. Albert Fuchs, Sr., Appellant.

## Gen. No. 30,062.

1. WITNESSES—*common-law rule as to capacity of one spouse as witness for or against other.* At common law neither the husband nor the wife could be a witness for or against the other in a civil suit.

2. WITNESSES—*statutory rule as to capacity of one spouse as witness for or against other.* Under the Evidence Act, Cahill's St. ch. 51, neither husband nor wife may testify as to admissions by or conversations with the other spouse, except in suits and causes between such husband and wife.

3. HUSBAND AND WIFE—*admissibility of evidence as to conversations between husband and wife prior to marriage, in action for alienation of husband's affections.* In an action by a wife against her father-in-law for the alienation of her husband's affections it was error, in view of Cahill's St. ch. 51, ¶ 5, to permit the wife to testify as to a conversation between her and her husband, occurring nearly a year prior to their marriage, touching the defendant's attitude towards their intended marriage.

4. HUSBAND AND WIFE—*admissibility of testimony by wife, in action against father-in-law for alienation of husband's affections, as to statements made by husband shortly before marriage touching defendant's attitude.* In an action by a wife against her father-in-law for the alienation of her husband's affections it was error, in view of Cahill's St. ch. 51, ¶ 5, to permit the wife to testify to statements made by her husband, shortly before their marriage, to the effect that in view of the defendant's objections to their marriage it would be better not to have either her parents or his at the wedding.

5. HUSBAND AND WIFE—*admissibility of testimony by wife, in action for alienation of husband's affections by his father, as to statements made by husband to her after their marriage touching defendant's attitude towards their marriage.* In an action by a wife against her father-in-law for alienation of her husband's affections it was error, in view of Cahill's St. ch. 51, ¶ 5, to permit the wife to testify that after their marriage, and following a discussion of certain matters between them and the defendant, the husband said: "If we stay away we shall be happy here. I hate to take a chance of moving down. I can't tell what might happen down there," and that the denial of a motion to strike out such testimony was likewise error.

6. HUSBAND AND WIFE—*admissibility of testimony by wife, in action for alienation of husband's affections by his father, as to statements to her by husband, touching defendant's attitude towards their marriage.* In an action by a wife against her father-in-law for alienation of her husband's affections it was error, in view of Cahill's St. ch. 51, ¶ 5, to permit the plaintiff, after she had testified that on a certain occasion her husband grabbed her throat and started to choke her, to testify that he then said: "My father was right."

7. HUSBAND AND WIFE—*admissibility of testimony by wife, in action for alienation of husband's affections by his father, as to conversation with husband at time of their separation.* In an action by a wife against her father-in-law for alienation of her husband's affections it was error, in view of Cahill's St. ch. 51, ¶ 5, to permit the wife to testify that, when she asked her husband, after they had lived for some time in a building owned by the defendant, whether they had to move, he replied: "Well, you are going to get out," and that it was likewise error to permit her further to testify that when she then asked her husband where he was going, he replied: "None of your damn business where I am going, but you are going to get out. We are going to have a separation agreement," and that the next time she saw him he had with him a guaranty of payments for her support, from his father, conditioned upon their separation.

8. HUSBAND AND WIFE—*admissibility of testimony by wife, in action for alienation of husband's affections by his father, as to husband's statements to her respecting payment of her allowance after separation.* In an action by a wife against her father-in-law for alienation of her husband's affections it was error, in view of Cahill's St. ch. 51, ¶ 5, to permit the wife to testify that when, after their separation, she called upon her husband in regard to the payment of her allowance, he told her he would not pay it, that his father had promised to give him certain property as soon as he had separated from her, and that when his father carried out his promise he would pay her the agreed allowance.

9. HUSBAND AND WIFE—*admissibility of testimony by wife, in action for alienation of husband's affections by his father, as to husband's statements to her as to defendant's obligation to pay her allowance after separation.* In an action by a wife against her father-in-law for alienation of her husband's affections it was error, in view of Cahill's St. ch. 51, ¶ 5, to permit the wife to testify that after their separation she called her husband on the telephone to ask in regard to the payment of her allowance, and that he said that he would not pay it, that his father would have to pay

it "because he ordered the music and he would have to pay the fiddler."

10. HUSBAND AND WIFE—*admissibility as evidence in wife's action for alienation of husband's affections by his father, of letter of husband to wife inclosing copy of letter to defendant respecting payment of allowance to plaintiff after their separation.* In an action by a wife against her father-in-law for alienation of her husband's affections it was error, in view of Cahill's St. ch. 51, ¶ 5, to admit in evidence a letter to the wife from her husband, which purported to inclose a copy of a letter from the husband to his father, calling the father's attention to the fact that he had failed to pay to the wife the allowance he had agreed to pay in the event of their separation, the statements therein being in the nature of an admission from husband to wife, and the admission of the evidence was likewise erroneous on the ground that it was entirely *ex post facto.*

11. HUSBAND AND WIFE—*admissibility as evidence in wife's action for alienation of husband's affections by his father, of excerpts from husband's diary, written before and after marriage, touching defendant's attitude toward their marriage.* In an action by a wife against her father-in-law for alienation of her husband's affections it was not error to admit in evidence excerpts from the diary of the husband touching his father's attitude toward plaintiff, made both before and after the marriage, the weight of such evidence being for the jury.

12. HUSBAND AND WIFE—*admissibility of testimony of third persons, in wife's action for alienation of husband's affections, as to declarations of husband showing state of his affections, his reason for separation, and effect of defendant's actions upon him.* In a suit by a wife for the alienation of her husband's affections she may prove by third persons declarations made by her husband showing the state of his affections at the time such statements were made, his motive or reason for separating from the plaintiff, and the effect of the defendant's actions upon him.

13. HUSBAND AND WIFE—*admissibility of testimony by defendant or of third persons, in wife's action for alienation of husband's affection by his father, as to statements of husband as to state of his affections, his reason for separation, and effect of plaintiff's actions upon him.* In an action by a wife for the alienation of her husband's affections testimony of the defendant, or of third persons, as to statements of the alienated husband, showing the state of his affections, his motive or reason for separating from the plaintiff, or the effect of the plaintiff's actions upon him, is admissible.

14. HUSBAND AND WIFE—*admissibility of testimony by defendant or third persons, in wife's action for alienation of husband's affections by his father, as to statements made by husband, prior to marriage, touching defendant's attitude towards the marriage.* In an action by a wife for alienation of her husband's affections evidence of statements made by the alienated husband, shortly prior to the marriage, concerning the attitude of his father towards the marriage, is admissible when testified to by the defendant or by third persons.

15. HUSBAND AND WIFE—*admissibility, in action for alienation of affections, of declarations of defendant to alienated spouse made in absence of plaintiff.* In an action for alienation of affections declarations of the defendant to the alienated spouse are admissible, although made out of the presence of the plaintiff.

16. HUSBAND AND WIFE—*admissibility, in wife's action for alienation of husband's affections by his father, of testimony by defendant as to statements of husband to him as to his reasons for leaving plaintiff.* In an action by a wife against her father-in-law for alienation of her husband's affections it was error to exclude defendant's offered proof that the husband said to the defendant, out of the presence of the plaintiff: "I cannot stand living with Gladys (plaintiff) any more. Her continual nagging, crying, fault finding and jealousy are driving me nearly crazy."

17. HUSBAND AND WIFE—*admissibility, in wife's action for alienation of husband's affections by his father, of defendant's statements to his son regarding his duty to remain with plaintiff.* In an action by a wife against her father-in-law for alienation of her husband's affections it was error to exclude offered proof by the defendant that he, out of the presence of the plaintiff, said to his son: "You married this woman. You have got to make it go. Don't come whining to me. Be a man, brace up and rule your family, but if you cannot do it, I cannot, and you have got to stick to your wife."

18. HUSBAND AND WIFE—*admissibility, in wife's action for alienation of husband's affections by his father, of testimony by defendant as to statements to him by husband as to reason for leaving plaintiff.* In an action by a wife against her father-in-law for alienation of her husband's affections it was error to exclude defendant's offer to prove that immediately after the death of the second child of his son and plaintiff, the son came to him, crying, and said: "I am going to leave tonight. She has let Gladys die because she would not call a doctor. I am not going to stay any more. I wanted to have a doctor and she would not, and I won't stay any more."

19. HUSBAND AND WIFE—*admissibility, in wife's action for alienation of husband's affections by his father, of defendant's statements to his son regarding the sufficiency of his reason for leaving plaintiff.* In an action by a wife against her father-in-law for alienation of her husband's affections it was error to exclude defendant's offer to prove that when his son came to him, after the death of his child, saying that he was going to leave his wife because she had let the child die because she would not call a doctor, defendant replied: "You knew that she was a Christian Scientist when you married her, and you were a Christian Scientist yourself. I don't believe much in Christian Science, but your wife has a right to her opinion, and that would not justify you in leaving her."

20. HUSBAND AND WIFE—*admissibility, in wife's action for alienation of husband's affection by his father, of defendant's statements to his son as to advisability of his leaving plaintiff or getting divorce.* In an action by a wife against her father-in-law for alienation of her husband's affections it was error to exclude defendant's offered proof that upon receipt of a certain letter the defendant said to his son: "In spite of what I wrote you, now that I think it over, I do not think that you ought to leave your wife, or get a divorce. Your wife has a sister down in Peoria. Why don't you go down to Peoria and visit your brother-in-law's family before you do anything further?"

21. HUSBAND AND WIFE—*admissibility, in wife's action for alienation of husband's affections by his father, of defendant's statements to his son as to the reasons for his difficulty with his wife.* In an action by a wife against her father-in-law for alienation of her husband's affections it was error to exclude defendant's offer of proof that, following the return of plaintiff and her husband from a visit to plaintiff's sister in another city, defendant said to his son, out of the presence of the plaintiff, in effect that if he, the son, had sense enough he would get along.

22. HUSBAND AND WIFE—*admissibility, in wife's action for alienation of husband's affections by his father, of testimony by defendant of conversation with his son concerning defendant's reason for agreeing to guaranty payment of allowance to wife after separation.* In an action by a wife against her father-in-law for alienation of her husband's affections it was error to exclude defendant's offer to prove that at the time of the execution of a guaranty by defendant to pay a certain allowance to plaintiff after she and his son had separated, the son came to defendant and said: "This thing has gone so far that I won't stay another day, but my wife won't let me go unless you guarantee that I will pay her $125 a month for five years, and $200 a month thereafter, and I have written it up

here in legal form"; that defendant then said to his son: "Well, if there is no other way I will sign this in order to help you out, but I still say that you ought to live with your wife, or get along somehow or other. I am only signing it because I think in a year or two you will be back again together," and that thereupon defendant signed the guaranty and delivered it to his son.

23. HUSBAND AND WIFE—*admissibility, in action by wife for alienation of husband's affections by his father, of testimony by defendant as to statements made to him by the husband touching the state of his feelings towards plaintiff.* In an action by a wife against her father-in-law for alienation of her husband's affections it was error to exclude defendant's offer to prove that shortly after the birth of the first child of plaintiff and his son, the son had a conversation with the defendant in which he said: "My wife is driving me mad with her Christian Science, I don't know what to do. She won't let me get a doctor to treat the baby, and I am at my wit's end."

THOMSON, J., specially concurring.

Appeal by defendant from the Circuit Court of Cook county; the Hon. JAMES S. BALDWIN, Judge, presiding. Heard in the third division of this court for the first district at the March term, 1925. Reversed and remanded. Opinion filed June 23, 1926. Rehearing denied July 8, 1926.

SONNENSCHEIN, BERKSON, LAUTMANN & LEVINSON, for appellant; HENRY S. MOSER, of counsel.

BANGS & FRANKHAUSER, for appellee.

MR. PRESIDING JUSTICE TAYLOR delivered the opinion of the court.

Gladys G. Fox and Carlton E. Fox (formerly Carlton E. Fuchs) were married in Chicago, on June 22, 1916, and lived together as husband and wife, with the exception of a short period, from that time until September 27, 1920, when they separated. On April 6, 1921, Gladys G. Fox, as plaintiff, brought this suit against Albert Fuchs, Sr., father of her husband, for damages for alienating her husband's affections and causing him to desert and abandon her. The issue upon which the case was tried was made by an

amended declaration, consisting of four counts, and a plea of the general issue.

The declaration alleges, in substance, that the defendant, contriving and wilfully intending to injure, prejudice and aggrieve the plaintiff, and to deprive her of the companionship, society, assistance, comfort, protection and happiness derived from her husband, Carlton E. Fox, and to alienate and destroy his affections for her, on September 27, 1920, and on divers other days between that day and the commencement of this suit, wrongfully, maliciously and wickedly induced and persuaded her husband Carlton E. Fox to desert, abandon and live separate and apart from her, and to cease his love and affection for her, and to terminate and end their living together.

There have been four jury trials. The first resulted in a verdict of $5,000 in favor of the plaintiff. That verdict, on motion of both parties for a new trial, was set aside. The second trial resulted in a verdict of the jury finding the defendant not guilty. That verdict was set aside upon a motion for a new trial by the plaintiff. The third trial resulted in a verdict in favor of the plaintiff in the sum of $50,000. That verdict was set aside, on motion for a new trial made by the defendant. The fourth and last trial resulted in a verdict and judgment for the plaintiff in the sum of $50,000. This appeal is from the latter judgment.

It is the claim of the plaintiff that the evidence shows the following: That she and her husband first became acquainted in 1908; that they became engaged in June, 1915; that the defendant, after he learned of the engagement, wrote to his son threatening to disinherit him if he did not marry some one of German blood; that they were married on June 22, 1916; that sometime in July, 1916, after they were married, the defendant slighted the plaintiff; that sometime shortly after they were married in 1916, the defendant wrote to his son and upbraided him for having married, and

for marrying one not German, and stated that he, the son, was now forgotten; that on April 17, 1918, the defendant wrote to his son and said if he had not been a "woman's slave" he would have gone to his, the defendant's office, together with his, the son's, brother, but not with his wife; that in November, 1918, without provocation, "out of a clear sky," her husband choked her into unconsciousness, and said, "My father was right"; that on May 25, 1918, their first child, Betsy, was born; that on July 17, 1919, the defendant wrote another letter upbraiding his son, and criticizing him for not marrying a German woman; that in August, 1919, the plaintiff's husband left her and stayed away from home until the following November; that after the first child, Betsy, was born, the defendant said he would never recognize the plaintiff as his daughter-in-law, because she was an American and not a German girl; that he wanted his grandchildren to be brought up as German children and not as Americans; that on April 4, 1920, the second child, named Gladys, was born, and died at the age of two months and twenty-five days; that on February 7, 1920, the defendant wrote to his son urging him to get a divorce from the plaintiff; that on September 25, 1920, when the plaintiff asked her husband if they had to move from the flat they were living in, he replied that she was "going to get out," and that when she asked him where he was going, he said, "None of your damn business where I am going, but you are going to get out, we are going to have a separation agreement"; that in September, 1920, the plaintiff's husband told her that his father wanted him to separate, and that if he did he would give him a position, and that rather than raise their children, he would separate the plaintiff and her husband and put them out of the building, and would disinherit them and give his money to the German orphans; that plaintiff's husband told her that his father had made it

miserable for them ever since they had been married; that on September 26, 1920, the defendant signed a guaranty, undertaking to pay the plaintiff $125 a month for five years, and $200 a month thereafter as long as the plaintiff remained the wife of his son; that that guaranty was made upon condition that a separation agreement should be entered into between the plaintiff and her husband; that on September 27, 1920, a separation agreement was entered into and signed by the plaintiff and her husband; that the plaintiff and her husband then separated; that in December, 1920, her husband told her that his father promised him that he would give him the Annex—a valuable property— as soon as he separated from her; that on March 11, 1921, her husband wrote to the defendant and sent a copy of the letter to her, as follows: "All that I can say now is, that the moment you are prepared to go on with the promise you made in reference to the Annex I am prepared to go on with this. It is your breach of that promise that is resulting in the difficulty you now find yourself in. I must repeat that I would not have made such an insane undertaking had it not been upon the reliance that you would do as you said you would do"; that on March 21, 1921, when the plaintiff called up her husband in reference to her allowance, he said, "My father will have to pay it, because he ordered the music, and he will have to pay the fiddler"; that after the final separation, the defendant did turn over a large quantity of property to his son.

The claim of the defendant, as to the facts, is that the alienation of affections of the plaintiff's husband was not caused by any act or conduct of his, the defendant's; that the disaffection of the husband and wife was caused by reason of disagreements and quarrels between them; that the defendant gave advice to his son only at his son's solicitation and after his son had made complaints as to her conduct to-

wards him, her husband; that the advice that he, the defendant, gave his son was given in good faith and was prompted only by his solicitude for the future welfare and happiness of his son.   The theory of the defendant as to the law is that serious error was committed in the admission and rejection of evidence.

In the view we take of this case, even though it has been tried so many times, it becomes necessary to reverse the judgment and remand the cause for a new trial, on the ground that substantial error was committed in the admission and rejection of evidence.

Pursuant to the ruling of the trial judge, following *Vallone v. Vallone,* 228 Ill. App. 543, decided by this court, the wife was allowed to testify in regard to certain conversations which took place between her and her husband in the course of the time they lived together as husband and wife, and, also, to conversations that occurred before marriage, and, also, after their separation.   We are now of the opinion that such evidence by her was incompetent.   In the *Vallone* case the statute was not referred to, and there was a brief only on one side.

At common law neither the husband nor the wife could be a witness for or against the other in a civil suit.   "This is a settled principle of law and equity, and it is founded as well on the interest of the parties being the same, as on public policy."   2 Kent's Com. 179; 4 Wigmore on Evidence § 2333; *Pugsley v. Smith,* 98 Ore. 448.   In *Waddams v. Humphrey,* 22 Ill. 661, it was held "on principles long established" that the deposition of the wife of a defendant, in a suit in equity to set aside a sale, was properly rejected, and in *Crose v. Rutledge,* 81 Ill. 266 (citing the *Waddams* case), which was an action on the case by a husband for the seduction of his wife, the court said: "The defense offered the divorced wife of the plaintiff as a witness to prove a fact which must have come to her knowledge, from the very nature of the fact, dur-

ing the existence of the marital relation. This testimony was properly excluded.''

A husband or wife being ineligible as a witness against the other in civil suits at common law, the question arises as to what extent the common law inhibition has been modified, if at all, by the statute on Evidence and Depositions. Cahill's St. ch. 51.

In *Rea v. Tucker,* 51 Ill. 110, which was an action brought against the defendant for criminal conversation with the plaintiff's wife, and resulted in a verdict and judgment for the plaintiff, the court said: ''The first reason assigned by appellant for a reversal of the judgment is, that the divorced wife of the plaintiff was allowed to testify, against the objections of the defendant. This was clearly error. The point has been often ruled, and the authorities are cited in 1 Greenleaf on Evidence, secs. 337-342; *Waddams v. Humphrey,* 22 Ill. 661.''

In *Mitchinson v. Cross,* 58 Ill. 366, a suit for malicious prosecution in which the plaintiff sought to prove by his wife the want of probable cause for the prosecution complained of, for the purpose of showing that the alleged slanderous words upon which it was based, and which imputed to the defendant adulterous intercourse with the witness before her marriage with the plaintiff, were true, the court held that husband and wife were competent witnesses for and against each other only in the cases mentioned in the exceptions to section 5 of the Act of 1867, and that the case in question did not fall within any of those exceptions and that, therefore, the wife as a witness was incompetent. The court said, in referring to the statute: ''The first section of this act of 1867 (Gross' Stat. 274), enacts that: 'No person shall be disqualified as a witness in any civil action, suit or proceeding, except as hereinafter stated, by reason of his or her interest in the event thereof as a party, or otherwise.'

''It is apparent that this provision of the statute

removes the disqualification of witnesses by reason of interest. But does it touch a disqualification based upon reasons of public policy? We think not. The question has arisen in England and in several of the States, under statutes similar to ours, and it has been uniformly held, that a statute removing incompetency, by reason of *interest,* did not remove it as to husband and wife.''

In *Groom v. Parables,* 28 Ill. App. 152 (1888), which was an action on the case for damages for criminal conversation with the plaintiff's wife, the court held that the wife of the plaintiff was not competent as a witness, and said: ''She was not a competent witness at common law, and she has not been made so by statute.'' Citing *Crose v. Rutledge,* 81 Ill. 266.

In *Huling v. Huling,* 32 Ill. App. 519, in an action by a wife against the parents of her husband for alienating the affections of her husband, the court said, in considering testimony given by the plaintiff as to conversations she had with her husband: ''It is also objected that the plaintiff was permitted to detail the conversations she had with her husband, as to their purpose of living together and as to the opposition of his parents to the marriage. This was manifestly not competent because it was purely hearsay and was highly calculated to prejudice the rights of the defendants.''

In *Mueller v. Knollenberg,* 161 Ill. App. 107, an action on the case for damages for the alienation of the affections of the plaintiff's wife, the court reversed a judgment for the plaintiff on the ground that it was error to allow him to testify that, in an effort at reconciliation, he had begged his wife to return. The court said: ''The husband or wife is not permitted to testify to admissions or conversations with the other whether made by him to her or by her to him or by either to third persons except in suits or

causes between such husband and wife. Hurd's Stat. 1906, sec. 5, chap. 51."

In *Scowden v. Taphorn*, 214 Ill. App. 394, which was a suit by a husband for damages for the alienation of his wife's affections, the trial judge permitted the wife of the plaintiff, over objection, to testify that she had never had improper relations with the defendant. The Appellate Court, holding that the admission of her testimony was error, said: "Plaintiff's wife is not a competent witness in this behalf either on the part of the defendant or on the part of the plaintiff." In that case, the court, after citing section 5, chap. 51, said:

"This section of the statute specifically holds that the husband or the wife shall not be rendered competent to testify for or against each other as to any transaction or conversation occurring during the marital life, except in the specific instances mentioned in that section of the statute, under none of which exceptions does plaintiff's wife come." Citing *Mitchinson v. Cross*, 58 Ill. 366; *Groom v. Parables*, 28 Ill. App. 153.

Section 1 of chapter 51 [Cahill's St. ch. 51, ¶ 1] provides: "That no person shall be disqualified as a witness in any civil action, suit or proceeding, except as hereinafter stated, by reason of his or her interest in the event thereof," and section 5 [Cahill's St. ch. 51, ¶ 5] provides: "No husband or wife shall, by virtue of section 1 of the Act, be rendered competent to testify for or against each other as to any transaction or conversation occurring during the marriage," with certain exceptions, and section 5 ends with the words, "provided that nothing in this section contained shall be construed to authorize or permit any such husband or wife to testify to any admissions or conversations of the other, whether made by him to her or by her to him, or by either to third per-

sons, except in suits or causes between such husband and wife.''

It follows that the rule of the common law still applies to any admissions or conversations of the other, and that such admissions and conversations are not authorized or permitted by the statute, ''except in suits or causes between such husband and wife.'' We shall consider *seriatim* a number of objections which were made at the trial on behalf of the defendant, and which were overruled.

1.   The plaintiff was asked to tell the circumstances concerning her engagement to Fox, who afterwards became her husband. The circumstances referred to occurred about a year prior to their marriage. Counsel for the defendant objected on the ground that it was a statement of facts which occurred prior to marriage. The court overruled the objection, basing his ruling on the *Vallone* case. In answering the question, the witness stated that although her husband wanted her to be present at his graduation exercises, he did not want her to go because his father would be there and he might see her and cause a scene. In our judgment the evidence was incompetent, as at common law a wife could not testify to a conversation with her husband, and the inhibition of the common law was not taken away by section 5 of chapter 51.

2.   The witness was asked if her husband said anything to her about the time they were married with reference to the opposition of her father to the marriage. That was objected to on the ground that it called for the disclosure by the witness of a communication made to her by her husband during the coverture, and was not proper under the Evidence Act [Cahill's St. ch. 51]. The objection was overruled, and the witness testified that they had ''a talk about getting married and about his father. He told me how opposed his father was to me because of my not being of German descent, so he said it would be better for

us both if we did not have either my parents there or his parents at the wedding, that we would just be there ourselves, so we had a wedding at the Congregational Church to which I had always gone." The objection should have been sustained.

3. The witness was asked what her husband said to her on a certain night after they had gone back to their apartment and talked some matters over with the defendant. Counsel for the defendant objected on the ground that the witness was incompetent to testify to the declaration of her husband made to her during marriage, on the ground that the Evidence Act prohibits the wife from testifying to any communication made to her by her husband during coverture, "whether during the existence of marriage relations or otherwise." The objection was overruled. The witness then testified that her husband said: "If we stay away we shall be happy here. I hate to take a chance of moving down. I can't tell what might happen down there." Counsel then moved to strike out the answer of the witness as incompetent. That motion was overruled. The objection should have been sustained, and the motion should have been allowed.

4. The plaintiff further testified that she and her husband moved to an apartment in the Chateau, a building owned by the defendant; that her husband treated her very kindly for a short time, and then on one occasion grabbed her by the throat and started to choke her, and that he said, "My father was right." Counsel for the defendant moved to strike out the last four words on the ground that the witness was incompetent to testify to a statement made to her by her husband during her marriage. The court ruled that it was admissible, in order to show the state of mind of the husband and the plaintiff, but not as anything that the defendant was supposed to have done. That was error.

5. The plaintiff was asked whether she had any

conversation with her husband in regard to their marriage relationship and their living at the Chateau. Counsel for the defendant objected on the ground that it was incompetent under the Evidence Act. The court overruled the objection and said that thereafter the record might show simply the same objection and the same ruling as theretofore, without relating the reasons each time. The witness then testified that she asked her husband if they had to move, and that he said, "Well, you are going to get out," and that was objected to, and a motion made to strike it out. The motion was overruled. She further testified that she asked him where he was going, and he said, "None of your damn business where I am going, but you are going to get out. We are going to have a separation agreement." She further testified that the next time he came back he had a guaranty from his father, but on the condition that she and her husband separate. All that evidence was inadmissible.

6. The plaintiff was asked if after the separation in 1920 she had any conversation with her husband in relation to the alienation of his affections, and if she did to state what was said. The witness then stated that she called on her husband in regard to her allowance, and he told her that he would not pay it, and that his father promised him that he would give him the Annex as soon as he separated from her, and that as soon as he got the Annex he would pay the allowance, and that his father would not have to do it. That conversation was inadmissible.

7. The witness testified, over objection, that she called her husband up on the telephone in regard to the March payment of her allowance; that he said he would not pay it; that his father would have to pay it "because he ordered the music and he would have to pay the fiddler." That was inadmissible.

8. There was offered in evidence, on behalf of the plaintiff, a letter from her husband which purported to

inclose a copy of a letter written by her husband to his father. Counsel for the defendant objected because the letter was a confidential communication between husband and wife "after the cause of action sued upon herein had accrued and was incompetent, irrelevant, immaterial and hearsay; because the wife derived the letter from her husband as a confidential communication; because the letter was too remote from the time of the alleged alienation to be competent and because it was incompetent, irrelevant and hearsay." The objection was overruled. The letter from the husband to his wife, the plaintiff, was as follows: "I am enclosing carbon of letter to my father of even date. I trust that he will cease his obstreperous non-action and will pay you up as he should."

The inclosure, being a copy of the husband's letter to his father, referred to the fact that the plaintiff had informed him, her husband, that the defendant had refused to go on with his undertaking, that is as to the payment of so much a month to the plaintiff.

That evidence was objectionable. It was entirely *ex post facto;* the tort, if any, had already been committed, and further, it was in the nature of a declaration by the husband to his wife and so obnoxious. Further, as this court said in *Farwell v. Farwell,* 234 Ill. App. 638: "We think the letters might be considered in the nature of an admission made by the husband to his wife, and are barred by the statute." Citing *Donnan v. Donnan,* 236 Ill. 341; *Goelz v. Goelz,* 157 Ill. 33; *Joiner v. Duncan,* 174 Ill. 252.

9. There was offered in evidence parts of a diary which had been kept by the plaintiff's husband. The contents of the diary were objected to on many grounds, and the objection overruled. The extracts from the diary offered in evidence were dated from January 1, 1916, to August 20, 1916. One of them dated February 25, 1916, contained the following:

"Glad and I had a long serious talk about my father

not wishing to have nothing to do with any woman I marry except she be German.''

Another, dated June 18, 1916, contained the following: ''Are marrying this way so that my father cannot turn us down.''

Although the diary was merely the secret, *ex parte,* voluntary, personal record of the husband, it contained statements made shortly before, and some after, the marriage, and must, we think, be considered as having some probative force, perhaps as corroboration of other evidence, and, therefore, admissible, its weight being left to the jury.

In the course of the examination of the defendant himself, his counsel made a number of offers of proof, which, upon objection for the plaintiff, were rejected as incompetent. Those offers of proof pertained chiefly to statements by the husband, three of them pertaining to matters regarding the state of the husband's affections for his wife, and the rest pertaining to matters tending to show a desire and conduct on the part of the father that his son should still continue and make an effort to live with his wife. Those offers of evidence give rise to the question: What statements of the alienated spouse may be testified to, if any, by the defendant and by third persons, and what statements made by the defendant to the alienated spouse in the absence of the plaintiff, if any, may be competent?

In *Murphy v. Willumsen,* 224 Ill. App. 425, after referring to the argument of counsel that the trial judge erroneously refused to allow the defendant to testify to a conversation she had with Murphy, the alienated spouse, out of the presence of the plaintiff, and after stating that it was argued that such evidence would have shown that the defendant was attempting to persuade Murphy to return to his wife, this court held, after citing *Bailey v. Bailey,* 94 Iowa 598, and *Scott v. O'Brien,* 129 Ky. 1, to the contrary, that the

admission of such testimony would violate the rule against self-serving declarations and was, therefore, inadmissible. With that we cannot now agree. In the *Vallone* case, 228 Ill. App. 543, we said:

"We are of the opinion, however, after examination of many cases and considering the necessity of proof of the state of the affections of the plaintiff's spouse, that evidence of statements on that subject made by him are competent."

We are in accord with that, but only if such evidence is offered by the testimony of the defendant, or of third persons testifying for either party.

In *Bassett v. Bassett*, 20 Ill. App. 543, which was an action on the case by a wife against her father-in-law, charging him with wrongfully and maliciously enticing her husband to separate himself from her, the court held that evidence by the defendant that his son was married to the plaintiff while intoxicated, and never had had any affection for the plaintiff before or after their marriage, was admissible in mitigation of damages, and also to prove the theory of the defendant that the husband voluntarily left the plaintiff. The court in that case said:

"The plaintiff claims that by the act of defendant she was deprived of the love and affection of her husband, for which she claims damages. Marriage, of itself, cannot be considered as conclusive proof of that mutual regard and love which should be entertained by husband and wife, and where one of them seeks to recover damages for the loss of love and affection, we know of no case that goes so far as to deprive the defendant of the right of showing the real feelings of the other to the plaintiff. So it has been held in cases brought by the husband for criminal conversation, that evidence as to the terms upon which the plaintiff and his wife lived together was competent in mitigation of damages  *  *  *. What is competent for her to show in aggravation of damages, the contrary

thereof is equally competent for the defendant to show in mitigation." The court also said in that case that "the proposed evidence was competent to be considered upon the question made that the husband voluntarily abandoned the plaintiff without the advice of the defendant."

In *Dunn v. Dunn*, 241 Ill. App. 11, which was a suit by a wife against her father-in-law for the alienation of her husband's affections, this court held that conversations between the defendant and his son, wherein the son told his father that he had received an anonymous letter regarding his wife which made him suspicious, and requested his father, the defendant, to have the plaintiff, the wife, shadowed by detectives, was competent.

It was also held there that a conversation between the plaintiff and the defendant, testified to by the defendant, in which he told her that it was not proper for her to be associating with a former husband, and that that was the reason her present husband, the defendant's son, was suspicious of her, and that they should patch the thing up, was competent.

It was further held there that conversations between the defendant and his son in the presence of a third person and in the absence of the plaintiff could be testified to by the third person, and also held that a letter which it was said was received by a witness, a third person, from the plaintiff, was competent; that conversations with the plaintiff by a third person were competent; that conversations between the defendant and the son in the plaintiff's absence were competent, and that defendant's expressed belief of what he had heard from a third person was competent.

In the opinion in that case the court said: "The letter and interviews were introduced upon the theory that having come to defendant's knowledge and being factors which influenced his advice and conduct, they were admissible as original evidence   *   *   *   as

part of the *res gestae."* Citing Jones on Evidence, vol. 2, section 346, p. 817.

The *Dunn* case does not mention either the *Murphy* or the *Vallone* case.

The following four paragraphs contain a statement of some of the rules of evidence, which, in our opinion, are applicable in this case:

1. In a suit by a wife for the alienation of her husband's affections she may prove by third persons declarations made by her husband showing the state of his affections at the time such statements were made, his motive or reason for separating from the plaintiff, and the effect of the defendant's actions upon him. 3 Wigmore on Evidence (2d Ed.) § 1730; 30 C. J. § 1011, p. 1139.

2. Testimony of the defendant, or other witnesses as to statements of the alienated husband, showing the state of his affections, his motive or reason for separating from the plaintiff, or the effect of the plaintiff's actions upon him, is admissible. 3 Wigmore on Evidence (2d Ed.) § 1730; 13 R. C. L. ¶ 527, p. 1477; 30 Cyc. ¶ 1011, p. 1139; *Cripe v. Cripe,* 170 Cal. 91; *Pugsley v. Smyth,* 98 Ore. 448; *Noll v. Carlin,* 101 Ore. 203; *Luick v. Arends,* 21 N. D. 614; *Schneider v. Tapfer,* 92 Ore. 520; *Bailey v. Bailey,* 94 Iowa 598; *Hardwick v. Hardwick,* 130 Iowa 230; *Price v. Price,* 91 Iowa 693; *Smith v. Rice,* 178 Iowa 673; *Glass v. Bennett,* 89 Tenn. 478; *Boland v. Stanley,* 88 Ark. 562; *Perry v. Lovejoy,* 49 Mich. 529; *Gilchrist v. Bale,* 8 Watts (Pa.) 355; *Ickes v. Ickes,* 237 Pa. 582; *Rash v. Pratt,* 31 Del. 18, 111 Atl. 225; *Rudd v. Rounds,* 64 Vt. 432; *Willey v. Howell,* 159 Ky. 805; *McGowan v. Armour,* 248 Fed. 676; *Bassett v. Bassett,* 20 Ill. App. 543 and *Scott v. O'Brien,* 129 Ky. 1.

3. Evidence of statements made by the alienated husband, shortly prior to the marriage, concerning the attitude of his father towards the marriage, is ad-

missible when testified to by the defendant or by third persons.

4. Declarations of the defendant to the alienated spouse are admissible. *Dunn v. Dunn, supra.* In 13 R. C. L. § 526, p. 1476, the author says that ordinarily the defendant's declarations, when self-serving, are not admissible in his or her own favor. Still to show that the defendant did not by any act on her part contribute to the alienation of the affections of the plaintiff's husband, it has been held that evidence of her statements and declarations to the husband, refusing his advances, are admissible on her behalf. Citing *Scott v. O'Brien, supra.* In the case cited, it appeared that the trial court had excluded evidence of conversations between the defendant and the plaintiff's husband in an action brought by the plaintiff for alienation of her husband's affections. By these conversations the defendant had sought to show that the plaintiff's husband was the first to seek the defendant and make love to her and that she had endeavored to get him to let her alone and return to his wife, but that he had persisted in his attentions to the defendant, so as to get her money and not because of any affection for her. The trial court excluded the evidence of these conversations, upon the ground that they included self-serving declarations by the defendant and that they were hearsay. On this point the court referred to the case of *Bailey v. Bailey,* 94 Iowa 598, in which a similar question arose and where that court held the offered testimony admissible, and the Kentucky court then held that the testimony there involved was within the rule laid down in the *Bailey* case, and admissible as a part of the *res gestae.* The court then said: "Did the appellant, by her intentional conduct, alienate the affections of appellee's husband * * *. The real facts in issue can only be determined from the acts and conduct of appellant and appellee's husband, and from the conversations

and communications which passed between them. The only way the jury could properly determine the issue involved was to have all the facts properly before them." Citing *Danforth v. Streeter,* 28 Vt. 490; *Daywitt v. Daywitt,* 63 Ind. App. 444; *McConnell v. Hannah,* 96 Ind. 105; *Porter v. Waltz,* 108 Ind. 46; *Carr v. State,* 43 Ark. 99; *Rudd v. Rounds,* 64 Vt. 432; *Price v. Price,* 91 Iowa 693; *Hardwick v. Hardwick,* 130 Iowa 230; *McCowan v. Armour,* 248 Fed. 676.

Apparently, in all the hearsay exceptions, and there are many, the principle of necessity, in one form or another, is found. Some cases purport to justify the admission of such evidence on the ground that it is part of the *res gestae.* That seems to be illogical. What is involved is a rule of evidence, and not what constitutes the *res gestae.* The latter may be known, but whether certain evidence is competent to show it, is another matter. The principle of necessity, therefore, seems to be the sole justification for the admissibility of such evidence; in other words, human nature and human relations being what they are, the facts undertaken to be proved cannot reasonably be shown in any other way.

In our opinion, as stated above, the declarations of the defendant should be considered as admissible. Not only should the plaintiff be permitted to introduce testimony as to declarations of the defendant tending to support the allegations to the effect that he has been guilty of alienating the affections of the alienated spouse, but the defendant should also be permitted to put in his own declarations tending to show the contrary.

The offers of proof above referred to, and now considered and set forth, *seriatim,* are as follows:

The first was an offer to prove by the defendant that the son said to his father, out of the presence of the plaintiff, "I cannot stand living with Gladys any more. Her continual nagging, crying, fault finding

Fox v. Fuchs, 241 Ill. App. 242.

and jealousy are driving me nearly crazy.'' That should have been admitted as bearing upon the state of his affections.

The second was an offer to show that at the same conversation he, the defendant, said to his son: ''You married this woman. You have got to make it go. Don't come whining to me. Be a man, brace up and rule your family, but if you cannot do it, I cannot, and you have got to stick to your wife''; and other facts of a similar import. That was competent and should have been admitted.

The third was an offer to prove by the defendant that immediately after the death of the second child his son came to him, the defendant, crying, and said: ''I am going to leave tonight. She has let Gladys die because she would not call a doctor. I am not going to stay any more. I wanted to have a doctor and she would not, and I won't stay any more.'' That should have been admitted as evidence of the state of his affections.

The fourth was an offer to prove that in answer to the latter statement by his son, he, the defendant, said: ''You knew that she was a Christian Scientist when you married her, and you were a Christian Scientist yourself. I don't believe much in Christian Science, but your wife has a right to her opinion, and that would not justify you in leaving her.'' That was competent and should have been admitted.

The fifth was an offer to show that upon receipt of a certain letter the defendant said to his son: ''In spite of what I wrote you, now that I think it over, I do not think that you ought to leave your wife, or get a divorce. Your wife has a sister down in Peoria. Why don't you go down to Peoria and visit your brother-in-law's family before you do anything further?'' That was competent and should have been admitted.

The sixth was an offer by the defendant to prove

that thereupon plaintiff and her husband visited the plaintiff's sister at Peoria; that after their return, the defendant and his son had another conversation, out of the presence of the plaintiff, in which the defendant said, in substance, that if he, his son, had sense enough he would get along. That was competent and should have been admitted.

The seventh was an offer by the defendant to prove that at the time the guaranty was executed by the defendant, his son came to him and said: "This thing has gone so far that I won't stay another day, but my wife won't let me go unless you guarantee that I will pay her $125 a month for five years, and $200 a month thereafter, and I have written it up here in legal form"; that he, the defendant, then said to his son: "Well, if there is no other way I will sign this in order to help you out, but I still say you ought to live with your wife, or get along somehow or other. I am only signing it because I think in a year or two you will be back again together," and that, thereupon, he, the defendant, signed the paper and gave it back to his son. That was competent and should have been admitted.

The eighth was an offer to prove that shortly after the birth of the first child his son had a conversation with the defendant in which the son said: "My wife is driving me mad with her Christian Science, I don't know what to do. She won't let me get a doctor to treat the baby, and I'm at my wit's end." That was competent and should have been admitted.

We are not unmindful of the difficulties encountered in the proper trial of such a case. Apparently, it was first decided in 1900 by the Supreme Court of this State in *Betser v. Betser*, 186 Ill. 537, that a wife might recover for the loss of her husband's affections against one who has alienated them. Being so recent, the rules of evidence that may be applicable, in this State, have not been so discussed and formulated that

it is easy to determine what is competent. Then, too, the issues in such a case are unusual and complicated, involving as they do the state of mind of the alienated spouse, its cause, the influence of the defendant upon him, the purpose of the defendant, and the damages, all of which tend to make the question of proof exceedingly difficult.

As it will be necessary for this case to be retried and as the evidence then will be different, it becomes unnecessary for us to pass upon the contentions that are made concerning certain instructions, and the damages awarded.

For the reasons set forth above, the judgment will be reversed and the cause remanded for a new trial.

*Reversed and remanded.*

O'CONNOR, J., concurs.

MR. JUSTICE THOMSON specially concurring: While I concur in the decision of this case, I do not agree with all that is said in the majority opinion. In actions for damages, based on the alleged alienation of the affections of a husband or of a wife, a much stronger case is required to be made out where the defendant is a parent of the spouse whose affections are alleged to have been alienated than is the case where the defendant is a stranger. *Cripe v. Cripe,* 170 Cal. 91; *Hutcheson v. Peck,* 5 Johns. (N. Y.) 196; *Bennett v. Smith,* 21 Barb. (N. Y.) 439; *Glass v. Bennett,* 89 Tenn. 478; *Ickes v. Ickes,* 237 Pa. 582; *Gernerd v. Gernerd,* 185 Pa. 233.

It has been well said (*Noll v. Carlin,* 101 Ore. 203) that the rules of evidence in this class of cases are somewhat *sui generis.* A consideration of the law with regard to the rules of evidence applicable to these cases, as exemplified in many decisions of the courts in various jurisdictions, to which counsel for the respective parties in the case at bar have called our attention, as well as a number of others, leads to the

conclusion that there are several well established rules on this subject.

First: So far as the law in our own State is concerned, a wife may not testify to any admissions or conversations had with her husband or by him with others during the marriage.

At common law, all communications between husband and wife were regarded as privileged. Neither husband nor wife could testify for or against each other. Parties in interest were disqualified as witnesses. By section 1 of our Evidence Act (Cahill's St. ch. 51, ¶ 1), the disqualification of interest in the suit was removed. By section 5 [Cahill's St. ch. 51, ¶ 5] of that Act the legislature has provided that notwithstanding the change in the law made by the provisions of section 1, no husband or wife shall thereby be rendered competent to testify for or against each other as to any "transaction or conversation," occurring during marriage, except in certain specific cases. But the legislature added a proviso to the end of this section, with the evident intention of making it certain that the changes the statute was making in the common law should not by any misunderstanding be given the effect of permitting any husband or wife "to testify to any admissions or conversations of the other, whether made by him to her or by her to him, or by either to third persons, except in suits or causes between such husband and wife." Such testimony was prohibited by the common law. The proviso is not only a reenactment of that law but a means which the legislature took of emphasizing the fact that the changes which were being made in the rules of evidence as to parties in interest and husbands and wives, must not be so construed as to interfere with the continuance of the operation of the common law rule of evidence covered by the proviso.

We are not unmindful of the fact that certain courts have attempted to so interpret the language of similar

legislation as to make it refer only to such admissions, conversations or communications as might be considered of a confidential or intimate nature. *Sexton v. Sexton,* 129 Iowa 487, is such a case. We are unable to agree with the reasoning of that line of decisions. It is only where the meaning of a statute is ambiguous or doubtful that there may be said to be room for such interpretation as is attempted by these cases. *Whittemore v. People,* 227 Ill. 471. The words of this proviso at the end of section 5 of the Evidence Act are clear, and there can be said to be no ambiguity as to their meaning. They state plainly that the husband or wife may not testify to "any admissions or conversations of the other," either made to the witness or a third person, except in suits between the husband and wife. An exhaustive review of the common law on this subject and the effect of the various enactments of the legislatures of the various States of the United States and their application to suits for alienation of affections, is to be found in the decision of the Supreme Court of Oregon in the case of *Pugsley v. Smyth,* 98 Ore. 448. In view of the fact that the common law rule of evidence mentioned in the proviso in section 5 is still in effect in this State, by virtue of the terms of that proviso, all the testimony of the plaintiff in the case at bar, relating to any admissions or conversations of her husband with her or with third parties, is incompetent, and to that extent we are obliged to recede from the position which we took in the opinion filed in connection with our decision of the case of *Vallone v. Vallone,* 228 Ill. App. 543.

Second: By other witnesses, a plaintiff wife, in a suit for the alienation of her husband's affections, may prove his declaration to others, showing the state of his affections at the time such statements were made, his motive or reason for separating from the plaintiff, or the effect of the defendant's actions upon him. 3 Wigmore on Evidence (2d Ed.) § 1730; 30 C. J. § 1011,

p. 1139. On this point, we adhere to our former rul-
ing in the *Vallone* case, to the effect that statements of
the alienated spouse are admissible, relating to the
alleged acts or words of the defendant, as tending to
show the state of mind and affections of the alienated
spouse. It should be kept in mind that such testimony
may be considered only with regard to that issue and
not as in any way tending to show the truth of the
alleged acts or statements of the defendant. Whether,
in fact, any such acts were committed or words spoken
by the defendant, as alleged, must be established by
other proof.

Third: Testimony as to statements made by the
estranged husband, prior to the marriage, concerning
the attitude of his father towards the marriage, are
immaterial and, therefore, they should not be ad-
mitted in evidence. Such was the ruling in *Pooley v.
Dutton,* 165 Iowa 745. In that case the court said:
"If plaintiff has any cause for action, it is for wrongs
suffered by him at the hands of the defendants after
the marriage. Such is the allegation of the petition,
and without it no recovery could be had. * * * In
attempting to sustain this charge, it is, of course, en-
tirely proper to show what the appellant said and did
after plaintiff's marital rights had accrued, but it
would be the extreme of injustice to ground a finding
of malice and conspiracy after the marriage upon the
fact that before it took place he did just what he might
lawfully do. The testimony discloses nothing what-
ever in the conduct of the appellant prior to the mar-
riage which was not clearly within his province as
father of the girl, nor any circumstance which would
justify the jury in finding that in so doing he was
actuated by malice." A similar ruling was made in
*Schneider v. Tapfer,* 92 Ore. 520. In that case the
court said that the testimony regarding the father's
feelings before the parties were married "certainly
did not tend to show happy married relations between

the plaintiff and his wife or to throw light upon her motive for leaving him four or five years afterward.'' The court held that the testimony was incompetent. In contending the contrary the plaintiff has called our attention to the case of *Preston v. Bowers,* 82 Am. Dec. 430. That was a case of criminal conversation, and not one for the alienation of the affections of the plaintiff's spouse.

Fourth: The defendant may introduce testimony either by himself or other witnesses, as to declarations of the alienated husband, showing the state of his affections, his motive or reason for separating from the plaintiff, or the effect of the plaintiff's actions upon him, as shown by the authorities cited in the majority opinion. As pointed out in a number of these cases, it is no objection to the admissibility of this testimony to say that it may offer an opportunity for perjury, and that the testimony may be manufactured as a result of a connivance between the alienated spouse and the defendant. The court would not be justified in excluding testimony from the jury on the ground of suspicion that there might be improper conduct, nor will the fact that a witness might lie, in reference to matters about which he has a right to testify, furnish a good reason for excluding the testimony.

Although the plaintiff contends that it is competent for witnesses to testify for the plaintiff as to declarations of the alienated spouse, made out of the presence of the defendant, tending to show affection, or motive for the separation, the very opposite is contended with reference to the testimony of the witnesses for the defendant as to the declarations of the alienated spouse, made out of the presence of the plaintiff, tending to show lack of affection or a motive for the separation. One may not successfully occupy such an inconsistent position. As was pointed out by the court in the *Illinois River Packet Co. v. Peoria Bridge Ass'n,* 38 Ill. 467: ''As a general principle, rules of evidence are

designed as well for the defendant as for the plaintiffs, and must be applied to them respectively in the same spirit of impartiality." In support of the contention that witnesses for the defendant may not be permitted to testify to declarations of the alienated spouse, tending to show lack of affection or the motive of the alienated spouse in separating from the plaintiff, where these declarations are not made in the presence of the plaintiff, our attention is directed to the case of *Luick v. Arends,* 21 N. D. 614. What the court held in that case was just the opposite of the proposition contended for. There, testimony was offered tending to show statements of the alienated spouse, detailing specific acts of alleged abuse and mistreatment of her by the plaintiff, but this testimony was not limited in purpose to show the state of mind or affections of the alienated spouse or the presence in her mind of a motive for the separation, but it was sought by that testimony to establish those acts of abuse and mistreatment, as facts. That being the situation, the court properly ruled that the testimony was not admissible. Immediately following that part of the decision the court goes on to say that the trial court admitted other statements of the alienated spouse, "but protected the rights of the parties by instructing the jury that the evidence was admissible only for the specific purpose for which it was offered, and that the same could not be considered as proof of the substantive facts contained in such exhibits." The exhibits referred to were apparently letters of the alienated spouse. The court then adds: "This was proper."

The plaintiff seeks further to limit testimony introduced in behalf of the defendant as to declarations of the alienated spouse, and contends that in order that such declarations may be admissible as against her, they must have been made "prior to the commencement of defendant's alienating influence." Such a

contention is untenable. The chief ultimate fact for the jury to decide in such a case is whether the defendant has, in fact, exercised any alienating influence. It would, of course, be quite impossible for the trial judge, when such evidence is offered, to invade the province of the jury and decide that issue, even before all the evidence was in, and, having done so, sustain an objection to the testimony unless it referred to a declaration made prior to the time when the court considered such alienating influence had commenced. In support of this proposition advanced by plaintiff, counsel cites the case of *Fratini v. Caslini,* 66 Vt. 273. That case contained a count alleging criminal conversation in addition to the one alleging alienation of affections. The case of *Palmer v. Crook,* 7 Gray (73 Mass.) 418, was a similar case containing a count for seduction and also one for alienation of affections. There the court admitted in evidence declarations and statements of the alienated spouse, indicating the condition of her affections toward her husband prior to the alleged seduction and in that connection the court observed that by confining such proof "to a period of time contemporaneous with their cohabitation, and prior to any misconduct on her part with the defendant, all danger of any improper use of such testimony is avoided." That there is a distinct difference between a case involving seduction or criminal conversation and one charging alienation of affections is well pointed out by the Supreme Court of Michigan in the case of *Edgell v. Francis,* 66 Mich. 303, 33 N. W. 501, which was an action by a husband against the parents of his wife, alleging the alienation of the affections of the latter, in which the court said: "This case differs from the usual action for seduction in the important particulars that the mischief is not done by the removal of the wife, or by destroying by one act the domestic peace. Here the mischief is a continuing one, going on from day to day, and becoming worse

with the delay. The principles, therefore, which always allowed inquiry into the wife's feelings and conduct prior to and at the time of the seduction, *must permit such inquiry during the whole period of alienation.* The law cannot very well shut out what to every intelligent person must appear significant and free from any danger of fabrication and falsehood. Most of this evidence is explanatory of the wife's residence with her parents, and is the only means, except examining her as a witness, of comprehending it. It is daily conduct, explained by concurrent declarations, and we do not think it is beyond the scope of inquiries always allowed in such cases."

In the case of *Puth v. Zimbleman,* 99 Iowa 641, 68 N. W. 895, there was offered in evidence a letter written by the alienated spouse, after the time it was claimed the defendant had had intercourse with her. It was contended that this letter was not admissible "under the well-known rule that in criminal conversation actions, correspondence and conversations with the wife, indicative of her feelings towards defendant, in order to be admissible, must have occurred prior to the alleged misconduct on her part, so that there may be no ground for imputing collusion." The court then said: "But it must be remembered that this is an action not only for criminal conversation, but for alienating the wife's affections. The latter cause of action is a continuing one, going on from day to day, and generally growing worse with time.   *   *   *   it seems to us that it is entirely proper to show the feelings of the wife toward her paramour during the whole period of alienation." In *Harringer v. Keenan,* 117 Wash. 311, a similar question arose. There certain letters of the alienated spouse were offered in evidence. It was shown that they had been written after the time the defendant began to show some attention to such alienated spouse and it was contended that the letters were not admissible for that reason. On that

Fox v. Fuchs, 241 Ill. App. 242.

point the court said: "The objection is not tenable. Alienation of affections is not usually accomplished on the instant. It is ordinarily a gradual process, extending over a considerable period of time, and it cannot be said to be finally accomplished until some overt act takes place which shows a want of affection. Here the overt act was separation, and letters written prior thereto were admissible."

It will be noted that in the case last cited the Supreme Court of Washington places a dividing line between declarations of the alienated spouse made before, and those made after, the separation. In referring to this subject the Supreme Court of North Dakota said, in the case of *Luick v. Arends, supra,* that declarations of the alienated spouse might be shown, "the requirement for admissibility being that they be made at a time when there exists no motive to deceive."

The Supreme Court of Vermont, cited by the plaintiff on this proposition, in connection with a case for criminal conversation as well as alienation of affections *(Fratini v. Caslini,* 66 Vt. 273), has intimated a more logical rule in the case of *Rudd v. Rounds,* 64 Vt. 432, 25 Atl. 438, which was a case covering alienation of affections only. In that case the court said that certain declarations of the alienated spouse should have been received in evidence, and then said: "They were made *before this suit was, or could have been, in contemplation.* As announced by REDFIELD, J., in *Danforth v. Streeter,* 28 Vt. 490: 'The jury were to judge * * * whether the declarations were made *bona fide* or were a mere ruse to get up evidence upon his own behalf, or for some other intended purpose.' "

We appreciate the fact that the plaintiff in an action for alienation of affections may seem to be placed at some disadvantage by an enforcement of these rules of evidence. While the plaintiff may introduce the testimony of third parties as witnesses, and thus show

such declarations as the alienated spouse may have made to them as above set forth, the plaintiff is precluded, personally, from taking the stand and testifying as to declarations made by the alienated spouse to the plaintiff. On the other hand, the defendant may not only show by the testimony of third parties such declarations as the alienated spouse may have made to them, but he may also testify himself as to those the alienated spouse may have made to him. But such disadvantage as that may occasion to a plaintiff in an action for alienation of affections is the result of the positive reassertion and reenactment of the common law rule precluding husband or wife from giving such testimony. This being the situation, the question of whether the so-called privilege rule shall be further liberalized is for the legislative branch of the government to decide and not for the courts. In some jurisdictions the statutes provide that the privilege may be waived by either spouse. In others it is provided that the rule shall apply only to such communications between husband and wife as may be considered confidential or intimate in character. In four States, namely, Arizona, California, Nevada and South Dakota, the statutes expressly provide that the rule shall not apply in actions for alienation of affections. In Illinois, however, the legislature has expressly provided that the common law rule will apply to "any admissions or conversations," whether made by either spouse to the other or to third persons, and that none of the provisions in the statute on evidence shall be so construed as to permit either spouse to testify as to such admissions or conversations, except in divorce cases.

Fifth: Declarations of the defendant to the alienated spouse are likewise admissible, as shown by the authorities referred to in the majority opinion. In the case of *Bailey v. Bailey,* 94 Iowa 598, the defendant sought to show what he had done in an attempt to

provide a home for the plaintiff and her husband, and conversations had with the latter, in connection with these efforts, and it was held that the trial court had erred in ruling that testimony as to what defendant had said was not admissible. In this connection the Supreme Court of Iowa said: "The fact that the statements were not made in the presence of plaintiff was wholly immaterial, for they were not offered as bearing upon her knowledge of defendant's treatment of his son. The purpose of the testimony was to show that defendant had, as a matter of fact, tried to induce his son to do the very thing plaintiff was insisting upon, and to show the condition of her husband's mind and the state of his affections toward her. Such testimony would have a tendency to negative the idea that defendant was trying to induce his son to abandon the plaintiff. It was substantive testimony of verbal acts tending to show that he was trying to induce his son to live with plaintiff, and that the son's refusal to do so was not brought about by his conduct. The expression of the son, made long before the commencement of the suit, that he would not live with the plaintiff on the land offered by defendant, or anywhere else, was certainly competent as bearing upon his feelings toward her. 2 Greenleaf on Evidence sections 55-57. The court permitted defendant to show what he did to induce his son to live with plaintiff. *What he said to accomplish the same purpose* was a part of the *res gestae,* and was, it seems to us, equally admissible. *Price v. Price,* 91 Ia. 693." In *Danforth v. Streeter,* 28 Vt. 490, we find a decision to the same effect, in which the court said that "whether the declarations of the defendant were made *bona fide* or were a mere ruse to manufacture evidence in his own behalf was for the jury to judge."

In the case of *Daywitt v. Daywitt,* 63 Ind. App. 444, it was contended that the trial court had erred in refusing to admit in evidence testimony as to the con-

duct, and also the declarations, of the defendants, as a part of the *res gestae,* tending to show an absence of malice on their part. It was held that this testimony was admissible. In this connection the court said: "The jury should have received them (defendants' declarations), and it was for them to say whether the declarations offered as a part of the *res gestae* were made in good faith or were merely manufactured evidence to be used in their (defendants') own behalf. It has been held that 'it is no objection to such declarations that they are self-serving, if they are a part of the *res gestae.'* *McConnell v. Hannah,* 96 Ind. 105. The term *'res gestae'* includes the surrounding facts of a transaction and accompanying declarations as well to explain the act done, or for showing a motive for acting, although such declarations, aside from this doctrine, may be said to partake of hearsay. 24 Amer. & Eng. Ency. of Law (2d Ed.) 662; 34 Cyc. 1642; *Porter v. Waltz,* 108 Ind. 46, 8 N. E. 705, and cases cited; *Carr v. State,* 43 Ark. 99, 103. In the case last cited the rule is announced in the following language: 'Circumstances and declarations which are contemporaneous with the main fact under consideration or so nearly related to it as to illustrate its character and state of mind, sentiments, or dispositions of the actors are parts of the *res gestae.'* "

In *Rudd v. Rounds,* 64 Vt. 432, it was sought to be shown that when the alienated wife left the plaintiff's home, she went to the home of one Barney; that at that time she bore marks of violence about her face and arms, but that the defendant advised her to return home but she expressed fears of bodily injury from the plaintiff, representing that the bruises she then bore had been inflicted by him, and she declined to follow the defendant's advice. The trial court excluded this testimony, and this was held to have been error, the court saying: "The nature of the suit, and what was involved in its solution, opened a broad field of inquiry

Fox v. Fuchs, 241 Ill. App. 242.

and investigation. The wrongful alienation of her affection by the defendant, resulting in her leaving and refusing to live with the plaintiff as his wife, constitutes the gist of the action. Her leaving and refusal bore upon whether her affections had been alienated from some cause, and, if caused by the wrongful conduct of the defendant, upon the amount of damages recoverable. What she said concurrent with and while she was leaving the plaintiff's house, and on her way to the house where the defendant was stopping, and when she had reached there, and her refusal, *at the request of the defendant,* to return to her husband, characterizing and giving the reason for her leaving and refusal to return, were a part of the *res gestae* of the leaving and refusal to return, and admissible in evidence.'' As will be seen, this testimony must have included statements by the defendant to the alienated spouse, constituting his advice that she return to her husband.

In *Price v. Price,* 91 Iowa 693, it was held that the trial court had properly received in evidence testimony of conversations between the alienated spouse and the defendant as well as others which had taken place between the defendant and the mother of the plaintiff. The court said such evidence had been properly received ''as tending to explain the relation of the parties to the suit and to the motives which induced them to act.''

In *Hardwick v. Hardwick,* 130 Iowa 230, the court said: ''The precise issue is whether the defendant has wrongfully and maliciously induced his son to separate himself and abandon plaintiff, as his wife, thus depriving her of the comfort, society, and support of her husband. The nature of this issue is such that it was not only proper to show the declarations and acts of defendant in respect to his son's marriage relation, but also to show the effect of these upon the son; that is, the state of the husband's mind toward

his wife in consequence of defendant's conduct, and the way in which such conduct, caused him to treat his wife. When the doing of an act by a person may be proven, the declarations of such person accompanying the act and having reference thereto are admissible in evidence as explanatory thereof.''

In *McGowan v. Armour,* 248 Fed. 676, the court held that any statements made by the defendant, indicating her feelings toward the alienated spouse, might be given in evidence by any person who heard her make such statements. In *Noll v. Carlin,* 101 Ore. 203, the defendant was permitted to introduce evidence tending to show her efforts to prevent a separation between the plaintiff and his wife, by introducing in evidence a letter she had written prior to the alienation, addressed, however, to the plaintiff.

The only cases in which this subject has been passed upon and in which contrary conclusions have been reached, so far as we have been able to find, are *Eagon v. Eagon,* 60 Kan. 697; *Nevins v. Nevins,* 68 Kan. 410, and a decision by another division of this court. *Murphy v. Willumsen,* 224 Ill. App. 425. These cases constitute the authority relied upon by the plaintiff in the case at bar, in support of her contention that evidence of declarations by the defendant is not admissible. The decision in the *Eagon* case was by a divided court. In the course of the dissenting opinion filed in that case, SMITH, J., said that in his judgment evidence tending to show statements of the defendant to his son, advising him to live with the plaintiff, were part of the *res gestae.* He called attention to the fact that the plaintiff, by her petition, had alleged that the defendant throughout a long period of time had ''constantly, persistently, and determinedly solicited, importuned, coaxed, requested, and commanded his son, the husband of the plaintiff, to leave and separate from plaintiff.'' He then said: ''To say that the *res gestae* were what the defendant below urged

against the marital interests of the woman is too narrow. The main fact in controversy in the case, the thing to be determined, was whether the father did or did not, by his words and conduct, alienate the affections of his son from the wife. The *res gestae,* then, covered transactions within the period from the date of marriage, December 17, 1894, until the final alienation on October 10th, following, during which time the father is charged with 'constantly and persistently' soliciting and importuning the son to leave his wife." A definition of *res gestae,* 1 Wharton on Evidence, ¶ 259, is then quoted as follows: "The *res gestae* may be, therefore defined as those circumstances which are the undesigned incidents of a particular litigated act, and which are admissible when illustrative of such act. These incidents may be separated from the act by a lapse of time more or less appreciable. They may consist of speeches of anyone concerned, whether participant or bystander. They may comprise things left undone, as well as things done. Their sole distinguishing feature is that they should be the necessary incidents of the litigated act." The dissenting opinion then says: "What the defendant below said to the son during the period that he was alleged to be working on the latter's affection for his wife in derogation of the latter's marital rights is said (in the majority opinion) to be admissible as part of the *res gestae,* but what he said to the contrary during the same period is held not to be so. Whether an act is within the *res gestae* ought not to be determined by the fact whether it has a favorable effect on the rights of the plaintiff or defendant in the suit. Here the transaction began in December, 1894, (when the marriage took place) and ended October 10th, following (when the parties separated). The acts, demeanor and statements within the time when the defendant below was engaged in the transaction of alienating his son's affections were a part of that

transaction, and I can find no reason or authority for · admitting statements made during that time which were favorable to the plaintiff below, and excluding those which might be injurious to her. If within the *res gestae,* all were admissible.'' Again, later in the course of the dissenting opinion, the question of whether the declarations of the defendant were open to the objection that they were not contemporaneous with the main fact to which they related, and therefore not a part of the *res gestae,* was referred to, and the writer of the dissenting opinion stated that in his opinion the declarations were not open to the objection that they were not a part of the *res gestae.* He then said: ''The principal fact was whether the defendant had, by a series of persistent inducements extending over a period of ten months, alienated the affections of his son from his son's wife. If a person assaulted in an affray should receive two or more stabs, what he said, at the time of receiving the last one, concerning the first, would be the narrative of a past transaction, but nevertheless admissible as a part of the *res gestae.* The true inquiry is whether the declaration is a verbal act, illustrating, explaining, or interpreting other parts of the transaction, of which it is itself a part, or merely a history, or part of a history, of a completed affair. The leaving and staying away from his wife by the son constituted the transaction upon which the action is founded. That is the *res gestae;* and the declarations of the father, he being one of the actors in that transaction, were competent to be shown.''

In the later case of *Nevins v. Nevins,* 68 Kan. 410, the court merely followed the decision of the majority of the court in the *Eagon* case, without discussing the merits of the question.

Whether the decision in *Murphy v. Willumsen,* 224 Ill. App. 425, be considered as holding incompetent both declarations of the alienated spouse to the de-

fendant or his witnesses and also the declarations of the defendant to the alienated spouse, as contended by the defendant here, or merely holding the latter class of evidence to be incompetent, as claimed by the plaintiff, I find it impossible to follow it. In referring to the evidence held to be incompetent, which it had been argued would have shown that the defendant was attempting to persuade the alienated spouse to return to the plaintiff, the court referred to only two cases, saying that the incompetency of such evidence seemed to be supported in *Bailey v. Bailey*, 94 Iowa 598, and *Scott v. O'Brien*, 129 Ky. 1, and the court then said: "We are referred to no other decided cases touching upon this question, and we have not found any other comment on this point either in the textbooks or reports." Reference has been made above to a number of decisions supporting the rulings laid down in the Iowa and Kentucky cases cited in the *Murphy* case. The rule affecting declarations of the alienated spouse, as to the time they were made, should likewise apply to the declarations of the defendant.